807 F.2d 493
 124 L.R.R.M. (BNA) 2065, 88 A.L.R.Fed. 67,
105 Lab.Cas. P 12,155, 105 Lab.Cas. P 12,188
 Kenneth WOOD, Jeffery Fansler, Charles Bohner, et al.,
Plaintiffs-Appellants, (85-1880)
Respondents-Appellees, (85-1963/64),
v.
INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS,
WAREHOUSEMEN AND HELPERS OF AMERICA, LOCAL 406, et
al., Hamady Bros., Food Markets, Inc.,
Defendants- Appellees, (85-1880)
Kroger Company, Petitioner-Appellant, (85-1963),
General Teamsters Union Local 406, Petitioner-Appellant, (85-1964).
 Nos. 85-1880, 85-1963 and 85-1964.
 United States Court of Appeals,
Sixth Circuit.
 Argued Sept. 22, 1986.
Decided Dec. 15, 1986.
Rehearing and Rehearing En Banc Denied Jan. 30, 1987.
 
 Gerry M. Miller, Milwaukee, Wis., for General Teamsters Union Local 406.
 Steven F. Spender, Hicks, Weston & Spender, Flint, Mich., for Hamady Bros. Food Markets.
 Dennis C. Kolenda, argued, Varnum, Riddering, Schmidt & Howlett, Grand Rapids, Mich., Joseph J. Vogan, for Kenneth Wood, et al.
 William M. Saxton, argued, Raymond J. Carey, Butzel, Long, Gust, Klein & Van Zile, Detroit, Mich., for Kroger Co.
 Gerry M. Miller, argued, Kenneth Dau-Schmidt, Goldberg, Previant, Uelman, Gratz, Miller & Brueggman, S.C., Milwaukee, Wis., Roger W. Bohr, Edward M. Smith, H. Rhett Pinsky, Grand Rapids, Mich., for General Teamsters Union Local 406.
 Before KEITH and KENNEDY, Circuit Judges; and CONTIE, Senior Circuit Judge.
 CORNELIA G. KENNEDY, Circuit Judge.
 
 
 1
 Petitioners-appellants Kroger Company ("Kroger") and General Teamsters Union Local 406 ("the Union") appeal from a jury verdict and various interlocutory orders entered by the District Court for the Western District of Michigan in an action brought by respondents-appellees, former employees of Kroger, ("plaintiffs") under Section 301(a) of the Labor Management Relations Act. Plaintiffs appeal from the District Court decision granting the motion of defendant-appellee Hamady Brothers Food Markets ("Hamady") to dismiss. The plaintiffs' action before the District Court was based on three claims: 1) breach of the duty of fair representation by the Union; 2) breach of the collective bargaining agreement ("the contract" ) by Kroger; and 3) successor liability of Hamady. For the reasons stated below, we affirm the District Court's dismissal of Hamady and reverse the Court's denial of Kroger's and the Union's motions for judgment notwithstanding the verdict.
 
 I. FACTS AND PROCEEDINGS BELOW
 
 2
 Plaintiffs' action arose out of Kroger's lease/sale of one of its warehouses to Hamady. Plaintiffs, 38 former Kroger warehouse employees, only one of whom was hired by Hamady, were represented by the Union at the time of the transfer.[1] The terms and conditions of their employment were controlled by a collective bargaining agreement between Kroger and the Union. Section 1.3 of the contract provided that "[t]his Agreement shall be binding not only upon the parties hereto but upon their successors and assigns." Collective Bargaining Agreement, Joint Appendix at 557. The agreement also established a grievance procedure, which was the exclusive mechanism for resolving disputes over the interpretation or application of the contract. The final, and binding, step of the procedure was arbitration. Id. at 564.
 
 
 3
 Kroger is an Ohio corporation, with operations in twenty-four states. In the spring of 1980, Kroger decided to sell its Michigan stores because they were not profitable. Arrangements were made to sell the stores to Hamady. On August 6, 1980, Hamady and Kroger entered into a separate agreement regarding the warehouse. The agreement provided that Kroger would lease the warehouse to Hamady for seven years, at the end of which time Hamady would purchase the warehouse. Kroger would also lease the equipment in the warehouse to Hamady for thirty-six months, with the provision that Hamady would purchase the equipment at the end of that period. Finally, Kroger and Hamady entered into a service agreement under which Hamady would provide Kroger stores with groceries and produce until October 4, 1980, with renewal options which could extend until January 3, 1981.
 
 
 4
 During the negotiations between Hamady and Kroger, Kroger representatives notified Hamady representatives of the collective bargaining agreement, and particularly of the successors and assigns clause. Mr. Hirsch, a Kroger representative, informed the Hamady representatives that the warehouse employees were a good group of people and that the dealings with the Union had been good. Joint Appendix at 824-25. A Union official testified that, in turn, Mr. Hirsch told the Union official that he did not think there would be a problem in terms of Hamady's assumption of the contract. In a letter dated September 23, 1980, a Union official informed Kroger that if Hamady did not assume the contract, the Union would hold Kroger responsible for any damages to the employees.
 
 
 5
 At the time of the announcement of the lease/sale to Hamady, the Union met with Hamady officials to determine the effect of the transfer on the employees. There was some discussion of the seniority rights of the employees. In a meeting on September 15, 1980, Mr. Griffin, a Hamady official, stated in response to Union inquiries that Hamady intended to do its hiring exclusively from the Kroger employee roster. Hamady officials understood that Kroger was happy with its workforce at the warehouse. Mr. Griffin also told the Union that Hamady would make an effort to take seniority into consideration. At the same meeting, the Hamady officials informed the Union representatives that they would not accept the collective bargaining agreement. Id. at 379-80. In a letter dated September 22, 1980, the attorney for the Union acknowledged to the Union that Hamady was probably not bound by the Kroger contract. Joint Appendix at 861-62.
 
 
 6
 The sale of the warehouse was announced to the employees in a meeting held on August 7, 1980. On September 27, 1980, a second meeting was held in order to answer questions regarding the employees' contract. At this meeting, Mr. Griffin, the Hamady official, informed the employees that Hamady would not adopt the contract and would not necessarily hire in order of seniority. Thereafter, the warehouse employees were interviewed and given physical examinations. Hamady posted the list of employees who would be hired. Hamady hired approximately half of the employees of the warehouse, but did not do so in order of seniority. On October 20, 1980, Kroger ceased operations at the warehouse and transferred the assets to Hamady.[2]
 
 
 7
 Hamady did recognize the Union as the exclusive bargaining agent for its new employees. After the meeting on September 27, Hamady officials engaged in bargaining with the Union. A new agreement governing the warehouse employees was reached on November 10 and ratified on November 22. The new collective bargaining agreement included many of the same provisions as the previous contract.
 
 
 8
 In early October, a former employee filed a grievance with the Union, claiming that Kroger and/or Hamady had violated the collective bargaining agreement. On that same day, the Union filed a grievance asserting that the agreement should be binding on Hamady and that Kroger had the obligation to see that Hamady assumed the contract. These grievances were denied at the Step 1 and Step 2 grievances. In addition to their request that the Union file a grievance, the employees requested that the Union seek an injunction against the transfer of the warehouse. Judge Hoffius of the Kent County, Michigan, Circuit Court initially entered a temporary restraining order, but the order was later dissolved.
 
 
 9
 The employees filed suit in the Kent County Circuit Court on October 16, 1980, claiming that: 1) the Union had breached its duty of fair representation, 2) Kroger had breached the collective bargaining agreement by failing to bind Hamady to the collective bargaining agreement, 3) Hamady was liable as a successor to Kroger, and 4) Hamady had discriminated against the employees on several different bases. The discrimination claims were severed and are not at issue here. Kroger and the Union removed the case to the District Court. When the representatives hearing the Step 3 grievance deadlocked, Kroger demanded a rehearing on this step of the grievance procedure. The Union, however, refused to participate because it contended that such a rehearing was not authorized. In February, 1981, the Union filed a motion to compel Kroger to arbitrate the grievances. The District Court ordered Kroger and Hamady to arbitrate the issues. It also ordered that the interested employees be allowed to provide a spokesperson of their own to participate in the arbitration proceedings. The Court retained jurisdiction of the case pending completion of the arbitration process.
 
 
 10
 The arbitration hearing lasted four days. Plaintiffs were represented by their own attorneys, who participated fully in the hearing. Thus, they presented witnesses and evidence, cross-examined the witnesses of the other parties, and submitted briefs. The arbitrator chosen by the parties was Robert Howlett, an experienced and respected arbitrator. On January 8, 1982, he issued an opinion finding that Hamady was not a "successor" to Kroger and thus was not obligated to arbitrate, and that Kroger was not obligated to require Hamady to assume the contract. The arbitration award was binding, in accordance with the collective bargaining agreement.
 
 
 11
 After the arbitration award was issued, plaintiffs filed a motion for trial in the District Court. Kroger moved to strike plaintiffs' jury demand on the ground that a jury trial is not available in a hybrid section 301 action. The District Court denied this motion, 565 F.Supp. 355. In response to other motions, the Court also refused to certify the action as a class action and refused to permit the arbitrator to testify at the trial. It also rejected Kroger's motion for summary judgment.
 
 
 12
 The liability issues were bifurcated and tried first. During the trial, the plaintiffs offered evidence presented by Professor Summers, a labor law professor with experience arbitrating. This testimony was admitted over the objections of both Kroger and the Union. The witness presented evidence that an arbitrator may be influenced by signals given out by a union indicating that the union does not want to win the case. Joint Appendix at 355-63. The District Court refused to admit into evidence the arbitrator's decision and award although it did permit testimony relating to them.
 
 
 13
 Hamady moved for dismissal after the plaintiffs had presented all of their proof. Its motion was granted. The District Court found that Hamady was not a "successor" to Kroger, and was not obligated to assume the collective bargaining agreement. District Court Opinion, Joint Appendix at 197. Plaintiffs appeal from this dismissal. The District Court denied Kroger's motion to dismiss on the ground that the expert witness presented evidence that the Union's conduct may have affected the arbitrator's decision, thus making it vulnerable.
 
 
 14
 The District Court submitted the following special interrogatories to the jury:
 
 
 15
 1. A. Did the Union violate its duty of fair representation by its conduct apart from the arbitration hearing with respect to the claims against Hamady?
 
 
 16
 B. Did the Union violate its duty of fair representation by its conduct apart from the arbitration hearing with respect to the claims against Kroger?
 
 
 17
 2. A. Did the Union violate its duty of fair representation by its conduct during and related to the arbitration hearing with respect to the claims against Hamady?
 
 
 18
 B. Did the Union violate its duty of fair representation by its conduct during and related to the arbitration hearing with respect to the claims against Kroger?
 
 
 19
 3. A. If your answer to Question 2A was "yes," did such violation seriously undermine the integrity of the arbitration process as that process related to the claims against Hamady?
 
 
 20
 B. If your answer to Question 2B was "yes," did such violation seriously undermine the integrity of the arbitration process as that process related to the claims against Kroger?
 
 
 21
 4. Did Kroger violate the successors and assigns clause by transferring the warehouse to Hamady without requiring Hamady to assume the collective bargaining agreement as a condition of the sale?
 
 
 22
 Joint Appendix at 215-16. The District Court instructed the jury that if it found that the Union had breached its duty and that that breach had undermined the arbitration process, it should determine whether Kroger breached the collective bargaining agreement. The jury found both that the Union had breached its duty and that that breach had undermined the arbitration process. It then found that the collective bargaining agreement obligated Kroger to require Hamady to assume the agreement.
 
 
 23
 Kroger and the Union both moved for judgment notwithstanding the verdict, or, in the alternative, a new trial. The District Court denied these motions. 603 F.Supp. 992. District Court Opinion, Joint Appendix at 218. It stated that there was sufficient evidence to show that the Union had breached its duty, both apart from and during the arbitration hearing, and that this breach had undermined the entire arbitration process. Furthermore, the Court found that the jury's interpretation of the term "successor" was supported by the evidence. On the petition of Kroger and the Union, the District Court certified the following five questions pursuant to 28 U.S.C. Sec. 1292(b):
 
 
 24
 1. Whether the Court properly ruled that plaintiff had a right to a jury trial in this case;
 
 
 25
 2. Whether, given the Court's determination that Hamady was not a successor under federal labor law, the jury could properly find a breach by the union of its duty of fair representation with respect to Hamady;
 
 
 26
 3. Whether there can be any recovery for Union conduct apart from the arbitration hearing regarding claims against Kroger or against Hamady;
 
 
 27
 4. Whether the jury was properly instructed regarding the standard that must be met by plaintiffs before the jury could find that the arbitrator's decision should be set aside; and
 
 
 28
 5. Whether the Court properly instructed the jury regarding the jury's interpretation of the Kroger-Local 406 contract.
 
 
 29
 Joint Appendix at 258.
 
 
 30
 This Court granted permission to appeal. These claims of Kroger and the Union, as well as plaintiffs' appeal from the dismissal of Hamady, are now before us.
 
 II. HAMADY'S DISMISSAL
 
 31
 At the close of plaintiffs' case, the District Court granted Hamady's motion for dismissal, finding that plaintiffs had not "made out a case against Hamady." District Court Opinion at 4, Joint Appendix at 200. The Court found no evidence to indicate that Hamady was an alter ego, that Hamady had assumed the collective bargaining agreement, or that there was common ownership or control of the two companies. The Court found, "[e]ven using the stricter standard of scrutiny required when considering a motion for a directed verdict," that Hamady was not bound by the collective bargaining agreement. Id. We affirm the judgment of the District Court.
 
 
 32
 The Court addressed in turn each of the three exceptions to the general rule that a new employer cannot be held to the terms of a former employer's collective bargaining agreement. First, the Court found that Hamady was not an "alter ego" of Kroger. The United States Supreme Court has stated that a new employer may be bound by the terms of the former employer's contract if the new employer is found to be "merely a disguised continuance of the old employer." Howard Johnson Co. v. Detroit Local Joint Exec. Bd., 417 U.S. 249, 259 n. 5, 94 S.Ct. 2236, 2242 n. 5, 41 L.Ed.2d 46 (1974) (citing Southport Petroleum Co. v. NLRB, 315 U.S. 100, 106, 62 S.Ct. 452, 455, 86 L.Ed. 718 (1942)). An "alter ego" will be found only in cases "involv[ing] a mere technical change in the structure or identity of the employing entity, frequently to avoid the effect of the labor laws." 417 U.S. at 259 n. 5, 94 S.Ct. at 2242 n. 5. The District Court correctly found that this case is not such a case and that the two corporations are "distinct corporate entities." District Court Opinion at 10, Joint Appendix at 206.
 
 
 33
 The District Court next considered whether Hamady had expressly or impliedly assumed the contract. The Court found that Hamady's answers to the employees' questions regarding its assumption of the contract were equivocal at best. In addition, "even if silence could be construed as acceptance in this context, Hamady was not silent for long." District Court Opinion at 12, Joint Appendix at 208. In fact, plaintiff Wood admitted in the verified complaint he filed with the Circuit Court for Kent County that Hamady had announced it would not adopt the contract: "Notwithstanding the successors and assigns clause of the labor Contract ..., Hamady has stated that it will not adopt the Contract." Joint Appendix at 35. The District Court found that plaintiffs did not present any evidence to indicate assumption of the contract, and that in fact, Hamady had expressly renounced the agreement.
 
 
 34
 The third circumstance in which a new employer may be held bound by its predecessor employer's contract is where there is "substantial continuity" of business operations, resulting in successor liability on the part of the new employer. Three Supreme Court cases address successorship in this context. See Howard Johnson Co. v. Detroit Local Joint Exec. Bd., 417 U.S. 249, 94 S.Ct. 2236, 41 L.Ed.2d 46 (1974); NLRB v. Burns Int'l Security Services, Inc., 406 U.S. 272, 92 S.Ct. 1571, 32 L.Ed.2d 61 (1972); John Wiley and Sons, Inc. v. Livingston, 376 U.S. 543, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964). These cases must be read together to understand the distinguishing criteria in this area. The District Court found that, under these three cases, Hamady was not liable as a successor.
 
 
 35
 In Wiley, a union brought an action to compel arbitration under a collective bargaining agreement adopted by the predecessor company. The new company had acquired the original company by merger. On these facts, the Supreme Court held that "the disappearance by merger of a corporate employer which has entered into a collective bargaining agreement with a union does not automatically terminate all rights of the employees covered by the agreement." Wiley, 376 U.S. at 548, 84 S.Ct. at 914. The Court limited this holding when it stated: "We do not hold that in every case in which the ownership or corporate structure of an enterprise is changed the duty to arbitrate survives." Id. at 551, 84 S.Ct. at 915. Where there is a lack of "substantial continuity of identity in the business enterprise," the Court acknowledged that the duty to arbitrate may not survive. Id.
 
 
 36
 In Burns a corporation that had been providing security services was replaced by a corporation that had submitted a lower bid. The new employer hired twenty-seven of the original forty-two guards and brought in fifteen of its own. The case arose in the context of an unfair labor practice charge as opposed to an action to compel arbitration. The Court held that the successor employer had a duty to recognize and bargain with the union representing the original employees, but did not have an obligation to adopt the contract provisions. The Court stated that, where the majority of employees after the change had been previously employed by the predecessor employer, the new employer must bargain with the union. Id. 406 U.S. at 281, 92 S.Ct. at 1579. In refusing to hold the successor employer bound by the prior agreement, the Court pointed out a significant difference between Burns and Wiley: "Its [Wiley's ] narrower holding dealt with a merger occurring against a background of state law that embodied the general rule that in merger situations the surviving corporation is liable for the obligations of the disappearing corporation." Id. at 286, 92 S.Ct. at 1581.
 
 
 37
 Finally, in Howard Johnson, the Court addressed a situation in which the successor employer had not hired a majority of the original employees and the change of ownership was by means of a purchase of assets rather than a merger. The Court held that, under Wiley, there was no substantial continuity of identity in the business enterprise and thus no duty to arbitrate. Howard Johnson, 417 U.S. at 263-65, 94 S.Ct. at 2244. In addition to the failure of the successor to hire a majority of the original employees, the Court emphasized the differences between a merger and a purchase of assets. First it stressed that the original employer fails to exist when two companies are merged, making it impossible for the employees to find relief if they cannot turn to the successor. Second, the Court mentioned that in the case of a merger, state law usually provides that the surviving corporation will assume the original company's obligations. Id. at 257-58, 94 S.Ct. at 2240-41. After Howard Johnson, there must be continuity in terms of both the workforce and the operations in order to find successor liability under the collective bargaining agreement.
 
 
 38
 The District Court correctly observed that the application of the "substantial continuity" test is fact specific. Joint Appendix at 209. Although Hamady did hire fifty-one percent of the former Kroger employees, the Court found, on the basis of the facts of the case now before this Court, that the distinctions between this case and Wiley were controlling. The Court stressed the facts that Kroger, the original employer, did not disappear; that state law provides for no assumption of obligations by a purchaser of assets; and that there were significant differences in the operations of Kroger and Hamady. Joint Appendix at 210-11. The transaction between Kroger and Hamady was an arms length transaction. Finally, the District Court added that policy considerations favored Hamady in this case. The Kroger warehouse was failing and Hamady knew substantial changes would have to be made for it to be made profitable. The Court found that if Hamady had known it would have to adopt the contract, it would not have purchased the warehouse at all. District Court Opinion at 16-17, Joint Appendix at 212-13.
 
 
 39
 We affirm the District Court's decision finding that Hamady was not bound by the collective bargaining agreement between Kroger and the Union and granting Hamady's motion to dismiss.
 
 
 40
 III. KROGER'S MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT
 
 
 41
 Petitioner Kroger raises three claims on interlocutory appeal. First, it claims that the District Court erred in failing to strike the plaintiffs' jury demand, thus allowing the jury to substitute its interpretation of the collective bargaining agreement for that of the arbitrator. Second, Kroger asserts that the arbitration award cannot be set aside unless there is a finding that the Union breached its duty of fair representation and that this breach tainted the arbitrator's decision. Third, Kroger claims that the Court erred because it failed to instruct the jury on the interpretation of the term "successor" under federal labor law. This Court finds that there was no evidence that any breach of the Union of its duty of fair representation tainted the arbitrator's decision. Thus, we do not reach Kroger's first and third claims. We reverse the District Court's denial of Kroger's motion for judgment as a matter of law and remand with direction to confirm the arbitration award.
 
 
 42
 A court may not review the merits of an arbitration decision, even when the basis for the decision is ambiguous, as long as the award draws its essence from the bargaining agreement. See United Steelworkers v. Enterprise Wheel & Car Corp., 363 U.S. 593, 598-99, 80 S.Ct. 1358, 1361-62, 4 L.Ed.2d 1424 (1960). Even in the event of a union's breach of its duty of fair representation, an arbitration award is not quickly set aside. Kroger correctly asserts that to vacate an arbitration award on this ground, there must be two findings. First, the Union must have breached its duty of fair representation to the employee. Second, the breach of duty by the Union must have tainted the arbitrator's decision. The breach must have contributed to the arbitrator's making an erroneous decision. Hines v. Anchor Motor Freight, Inc., 424 U.S. 554, 96 S.Ct. 1048, 47 L.Ed.2d 231 (1976).
 
 
 43
 In Hines, the Supreme Court held that if the union's breach of its duty of fair representation seriously undermines the integrity of the arbitration process, that breach also removes the bar of finality of the arbitration decision. Hines, 424 U.S. at 567, 96 S.Ct. at 1057. The question for the Court is whether there is substantial reason to believe that a union's breach of duty contributed to the erroneous outcome of the arbitration proceeding. The Supreme Court concluded: "Petitioners, if they prove an erroneous discharge and the Union's breach of duty tainting the decision ..., are entitled to an appropriate remedy against the employer." Id. at 572, 96 S.Ct. at 1060.
 
 
 44
 There was conflicting evidence presented to the jury in this case with respect to the breach by the Union of its duty of fair representation in the manner of its presentation of the grievance at the arbitration hearing. However, there was no evidence from which the jury could find that there was "substantial reason to believe that a union breach of duty contributed to the erroneous outcome of the contractual proceedings," assuming that the outcome was erroneous. Hines, 424 U.S. at 568, 96 S.Ct. at 1058. Here, plaintiffs' position was fully presented to the arbitrator by their own attorneys. These attorneys were permitted to examine witnesses, offer evidence and participate fully in the four-day hearing before the arbitrator.
 
 
 45
 Plaintiffs cite the Union's objections to evidence and testimony presented by plaintiffs, and claim that this conduct on the part of the Union undermined the entire arbitration process. The number of objections made by a party, however, is irrelevant to the arbitrator in making his decision. Plaintiffs had ample opportunity to correct any erroneous assertions made by the Union and to compensate for its behavior. Plaintiffs' independent attorneys insured that plaintiffs' interests were fairly represented. Any breach by the Union of its duty of fair representation therefore could not have tainted the decision of the arbitrator.
 
 
 46
 Plaintiffs assert that the Union signalled to the arbitrator that it did not desire to win the case. They claim the Union accomplished this by objecting to plaintiffs' evidence and by permitting the arbitrator to see a letter from the Union attorney to the Union opining that the Union had only a fifty-fifty chance of winning the grievance. Plaintiffs had attempted to present to the arbitrator their claim that the Union had breached its duty of fair representation in not taking stronger steps to get seniority in the contract with Hamady. In defense of that claim, the Union intended to show that it had relied on counsel's opinion that it was unlikely that Hamady was bound by the successor and assigns clause when bargaining with Hamady. The arbitrator declined to hear the unfair representation claims. An exhibit including the letter was left with the arbitrator and returned by him. The circumstances permit an inference that he may have seen the letter. Plaintiffs presented an expert witness, experienced in arbitration, who testified that signals by the Union that it didn't want to win would be likely to influence an arbitrator, although he also acknowledged that they might not and the arbitrator might indeed lean the opposite way. The essence of plaintiffs' claim is that the arbitrator did not decide the case on the basis of the evidence and law presented to him but on the basis of some signal from the Union. Plaintiffs are making an attack on the impartiality of the arbitrator. Whether the arbitrator was influenced by the Union's signals is a question relating to bias or prejudice on the part of the arbitrator. There was no claim made at trial, however, that the arbitrator was biased or influenced by the Union. Expert testimony that some arbitrators may be influenced by union signaling does not permit the speculation that this arbitrator was so influenced where plaintiffs' own attorneys fully presented their case. There was no assertion that the arbitrator was anything but respectable, and his 82-page opinion appears to be thorough and supported by the evidence.
 
 
 47
 The evidence proffered by plaintiffs to prove that the arbitration award should be set aside does not support the requisite claim that the Union's breach tainted the arbitrator's decision, but instead goes to an issue not raised, specifically the neutrality of the arbitrator. We reverse the District Court's denial of Kroger's motion for judgment as a matter of law on the ground that there was insufficient evidence to justify vacating the arbitration award. The arbitrator's decision that Kroger did not violate the contract by failing to require Hamady to assume the contract is binding on the parties.
 
 
 48
 IV. THE UNION'S MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT
 
 
 49
 The Union argues that its conduct was not the but-for cause of any loss suffered by plaintiffs and that it therefore cannot be found liable to plaintiffs for breach of the duty of fair representation. The District Court, denying the Union's motion for judgment notwithstanding the verdict, found that there was sufficient evidence to support the findings of the jury that the Union violated its duty both apart from and during the arbitration. We hold that the Union is not liable to plaintiffs for any form of damages, including attorneys' fees, and we reverse the District Court's denial of the Union's motion for judgment as a matter of law.
 
 
 50
 Plaintiffs claim that the Union breached its duty of fair representation with respect to its representation of their claims against Hamady and Kroger both apart from and during the arbitration. Where the alleged breach relates to the arbitration, an employee will not be entitled to recover from a union if the union's breach did not lead to injury. A court will not award sanctions that are solely punitive against a union. In Hines v. Anchor Motor Freight, Inc., the Supreme Court stated: "To prevail against either the company or the Union, petitioners must not only show that their discharge was contrary to the contract but must also carry the burden of demonstrating breach of duty by the Union." Hines, 424 U.S. at 570-71, 96 S.Ct. at 1059. See also United Parcel Service, Inc. v. Mitchell, 451 U.S. 56, 62, 101 S.Ct. 1559, 1563, 67 L.Ed.2d 732 (1981); Clayton v. United Automobile Workers, 451 U.S. 679, 683 n. 4, 101 S.Ct. 2088, 2092 n. 4, 68 L.Ed.2d 538 (1981). This Court has similarly held that a union owed no damages to a plaintiff if the employer did not act wrongfully. St. Clair v. Local Union No. 515, Int'l Brotherhood of Teamsters, 422 F.2d 128, 132 (6th Cir.1969). In the case before this Court, therefore, plaintiffs must prove both the breach of duty and the wrong of the employer that resulted in their loss. We have dismissed plaintiffs' claims with respect to both Hamady and Kroger. Because, as found by the arbitrator, there was no breach of the collective bargaining agreement and no injury to plaintiffs, we find no liability on the part of the Union with respect to its representation of their claims during the arbitration proceeding.
 
 
 51
 With respect to conduct apart from the arbitration, the Union is liable for damages only if its breach was a "but-for" cause of those damages. "[C]ourts have held unions not liable for breaches of their duty of fair representation absent evidence that but for the union's conduct the employee would not have been injured." Anderson v. United Paperworkers Int'l Union, 641 F.2d 574, 580 n. 8 (8th Cir.1981). The Court of Appeals for the Third Circuit also summarized the applicable law relating to a union's breach of duty in this situation: "[T]he federal courts have consistently required a direct nexus between breach of this duty and resultant damages to the individual or minority segment as an element of liability." Deboles v. Trans World Airlines, Inc., 552 F.2d 1005, 1018 (3d Cir.), cert. denied, 434 U.S. 837, 98 S.Ct. 126, 54 L.Ed.2d 98 (1977).
 
 
 52
 In support of their claim of breach of the duty of fair representation, plaintiffs submit numerous acts of the Union conducted apart from the arbitration and other actions it failed to take. They claim, among other things, that the Union failed to keep its members advised as to the negotiations with Hamady, failed to make reasonable efforts to require Hamady to honor the contract, negotiated a new deal with Hamady considering solely its own interests, and harassed plaintiffs. Supplemental Complaint, Joint Appendix at 80-84. In order to recover against the Union, plaintiffs must demonstrate that Hamady would have adopted the contract and that they would not have been injured had the Union not breached its duty. See Acri v. Int'l Ass'n of Machinists, 781 F.2d 1393, 1397 (9th Cir.1986) (affirming grant of summary judgment against employees because plaintiffs could not establish that the employer would have given in to their demands).
 
 
 53
 We can only speculate whether Hamady would have hired the employees by seniority in accordance with the contract if the Union had performed all the acts and refrained from all the acts which plaintiffs claim it should have. Plaintiffs presented no evidence to establish this causal connection between the Union's alleged breach and their alleged injuries. We hold that the Union is not liable to plaintiffs with respect to its representation of their interests apart from the arbitration.
 
 
 54
 Plaintiffs finally claim that they are entitled to the expenses they incurred because the Union would not fairly represent them in the arbitration proceeding. These expenses consist of attorneys' fees due the counsel that represented the plaintiffs in the four-day hearing. Plaintiffs assert that because the Union failed to fairly represent their interests, plaintiffs hired their own outside counsel and thus were damaged to the extent of the attorneys' fees. Plaintiffs contend that the Union's breach caused damage that is independent of the claims against Kroger and Hamady and that they should be able to recover these expenses regardless of the outcome of their grievance.
 
 
 55
 Several courts have held that an employee may recover attorneys' fees even where the outcome of the arbitration favored the employer. In Del Casal v. Eastern Airlines, Inc., the union's refusal to process the claims of an employee was found to be a breach of its duty. Del Casal v. Eastern Airlines, Inc., 634 F.2d 295 (5th Cir.), cert. denied, 454 U.S. 892, 102 S.Ct. 386, 70 L.Ed.2d 206 (1981). Although the claim of wrongful discharge was decided in favor of the employer, the court awarded attorneys' fees to the plaintiff. The court stated that "[h]ere, the damage caused by the union was the attorney's fee which Del Casal incurred as a result of the union's breach." Id. at 301. Citing Del Casal, the Court of Appeals for the First Circuit held that a union was liable only for the increase in damages to the plaintiff that it brought about. It stated, however, that "[t]hese additional damages--apparently consisting of additional legal costs--were incurred ... whether or not [the plaintiff] won on the merits of his grievance." Stanton v. Delta Airlines, Inc., 669 F.2d 833, 838 (1st Cir.1982). Similarly, the Court of Appeals for the Ninth Circuit has held that an employee is entitled to attorneys' fees incurred because he is forced to represent himself. See Dutrisac v. Caterpillar Tractor Co., 749 F.2d 1270 (9th Cir.1983).
 
 
 56
 Claims for attorneys' fees in cases such as this one must be examined on a case-by-case basis. We decline to follow the circuits that have granted recovery of damages in the form of attorneys' fees where the plaintiff did not prevail on the merits of the grievance. The Union is intended to serve as the exclusive agent for the member employees and employees should be discouraged from pursuing their claims independently. Moreover, it is against "sound judicial policy to encourage actions to recover only the costs of litigation where no underlying right can any longer be vindicated in the action." Badon v. General Motors Corp., 679 F.2d 93, 98 (6th Cir.1982). Granting attorneys' fees to each member employee who demonstrates a breach of the duty of fair representation but no injury will lead to frivolous actions. We hold that plaintiffs are not entitled to recover attorneys' fees from the Union.
 
 V. CONCLUSION
 
 57
 We affirm the District Court's judgment granting Hamady's motion to dismiss. We reverse the Court's denial of petitioners-appellants' motions for judgment notwithstanding the verdict and we remand with direction to confirm the arbitration award.[3]
 
 
 58
 CONTIE, Senior Circuit Judge.
 
 
 59
 I concur in the majority's conclusion, reversing and remanding this case and agree with its analysis in reaching that conclusion. However, I would have resolved the important issue of whether the right to a jury trial exists in a hybrid action for breach of a collective bargaining agreement and breach of the duty of fair representation brought under Sec. 301(a) of the Labor Management Relations Act, 29 U.S.C. Sec. 185(a). In the present case, both the Union and Kroger moved to strike the plaintiffs' demand for a jury trial. The district court denied the motions and the plaintiffs' hybrid Sec. 301 action was tried to a jury.
 
 
 60
 Generally, the right to a jury trial exists either under the Seventh Amendment or by statute. Clearly, no labor statute specifically grants the right to a jury trial in a hybrid Sec. 301 action. Thus, the sole question is whether the right exists under the Seventh Amendment. That amendment states that "[i]n Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved...." The Seventh Amendment guarantees jury trials not only in actions known at common law, but also in actions created after passage of the Seventh Amendment "if the action involves rights and remedies of the sort typically enforced in an action at law." Curtis v. Loether, 415 U.S. 189, 195, 94 S.Ct. 1005, 1009, 39 L.Ed.2d 260 (1974) (footnote omitted). Thus, whether a jury trial is available depends on the historical nature of the claim; a claim "legal" in nature is generally triable to a jury where an "equitable" claim is not.
 
 
 61
 In determining whether the right to a jury trial exists for a newly-created action, the focus is "on the nature of the issue to be tried rather than the character of the overall action." Ross v. Bernhard, 396 U.S. 531, 538, 90 S.Ct. 733, 738, 24 L.Ed.2d 729 (1970) (emphasis added, footnote omitted). Thus, resolution of the jury trial question turns on whether the issues involved are legal or equitable in nature. As the Supreme Court observed in Ross, "the 'legal' nature of an issue is determined by considering, first, the premerger custom with reference to such questions [i.e., whether that type of issue was customarily tried to a jury or court]; second, the remedy sought; and, third, the practical abilities and limitations of juries." Id. at 538 n. 10, 90 S.Ct. at 738 n. 10. This Circuit has recognized that the second of these elements is the most significant. Hildebrand v. Board of Trustees, 607 F.2d 705, 708 (6th Cir.1979), cert. denied, 456 U.S. 910, 102 S.Ct. 1760, 72 L.Ed.2d 168 (1982).
 
 
 62
 The individual issues presented in this case, as in any hybrid Sec. 301 action, are whether the Union breached its duty of fair representation and whether the employer, Kroger, breached the collectively bargained labor contract. I would find that the fair representation issue is equitable in nature, and therefore not triable to a jury, because the primary relief sought for breach of the duty of fair representation is equitable. That is, in order to reach the breach of contract issue, the plaintiffs had to have the arbitration award set aside, which could only be done by proving that the Union breached its duty of fair representation and also seriously undermined the arbitration process. See Hines v. Anchor Motor Freight, Inc., 424 U.S. 554, 567, 96 S.Ct. 1048, 1057, 47 L.Ed.2d 231 (1976). Setting aside an arbitration award is certainly an equitable remedy. Therefore, under Ross, the duty of fair representation claim would be considered equitable in nature.
 
 
 63
 However, considering the breach of contract issue separately from the fair representation issue, I would find that it is legal in nature and triable to a jury. A breach of contract claim customarily presents a legal issue and the remedy sought for this particular claim, damages in the form of backpay, is a legal remedy. Thus, I believe that under Ross the claim against Kroger was triable to a jury as a "legal" claim.[1]
 
 
 64
 Accordingly, I would have held that the district court erred in denying in their entirety the motions to strike the plaintiffs' jury demand. In my opinion, the court instead should have granted the motions with regard to the fair representation claim and tried the issues inherent in that claim itself. Then, only if the court concluded that the arbitration award had to be set aside, which we hold today that it could not have been, should it have tried the breach of contract claim to a jury.
 
 
 
 [1]
 The one employee hired by Hamady alleged a loss of wages and benefits
 
 
 [2]
 Due to unfavorable economic conditions, Hamady ceased operations one year later in October of 1981
 
 
 [3]
 We do not reach the issue discussed by Judge Contie in his separate concurrence. However, we have no disagreement with his analysis
 
 
 [1]
 In my opinion, these conclusions are not inconsistent with the Supreme Court's pronouncements in United Parcel Service v. Mitchell, 451 U.S. 56, 101 S.Ct. 1559, 67 L.Ed.2d 732 (1981), and DelCostello v. International Brotherhood of Teamsters, 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983). Both cases involved Sec. 301 hybrid actions, both involved statute of limitation questions, and in both the Court elaborated on the nature of hybrid Sec. 301 actions. In Mitchell, the Court rejected the notion that a hybrid Sec. 301 action could be characterized as a tort or contract action, stating that the action was "more analogous to an action to vacate an arbitration award than to a straight contract action." 451 U.S. at 62, 101 S.Ct. at 1564. In DelCostello, the Court maintained its view that a hybrid Sec. 301 action is not analogous to a contract claim, but retreated from the "imperfect" view that it was analogous to an action to vacate an arbitration award. The Court instead analogized hybrid Sec. 301 actions to unfair labor practice actions and therefore held applicable to hybrid Sec. 301 actions the six-month statute of limitations contained in Sec. 10(b) of the National Labor Relations Act
 Neither Mitchell nor DelCostello apply in the present situation because both involved statute of limitation questions and therefore focused on the overall characterization of a hybrid Sec. 301 action, rather than on the nature of the individual issues presented in such an action. Under Ross, the latter inquiry, and not the former, is clearly the proper focus in determining a Seventh Amendment question. See Ross, 396 U.S. at 538, 90 S.Ct. at 738.