John WINSTON, et al., Plaintiffs,

v.

GENERAL DRIVERS, WAREHOUSEMEN & HELPERS LOCAL UNION NO. 89, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, et al., Defendants.

No. C91–0204–L(R).

United States District Court,
W.D. Kentucky,
at Louisville.

Feb. 22, 1995.

Marvin L. Coan, Hummel & Coan, Louisville, KY, for plaintiffs John Winston, Tom Jennings, Dale Huffenberger, Fred Potter, Richard Bounds, Ercil Wilkinson, Elmer Finley, Charles Hammond, Gregory Woodward, Larry Worsham, Thomas Keel, Richard Austin, John Ramby, Charles McKenzie, Larry Harris, Greg Phillips, Randy Sierakowski, Paul Sierakowski, Joe Thompson, Ronald Matteson, Austin Davis, David Miller, Albert Trogdon, Russell Gibson, James McKim, Austin Summerlin, Charles Baxter, Donald R. Corder.

F. Larkin Fore, Mulloy, Walz, Wetterer, Fore & Schwartz, James U. Smith, III, Smith & Smith, Louisville, KY, C. John Holmquist, Jr., Charfoos, Reiter, Peterson, Holmquist & Pilchak, Farmington Hills, MI, for defendant Dallas & Mavis Forwarding Co.

James U. Smith, III, Smith & Smith, Louisville, KY, C. John Holmquist, Jr., Charfoos, Reiter, Peterson, Holmquist & Pilchak,

Farmington Hills, MI, for defendant Provincial American Truck Transporters.

Alton D. Priddy, Hardy, Logan, Priddy & Cotton, Louisville, KY, for defendant Intl. Broth. of Teamsters, Chauffeurs, Warehousemen & Helpers.

## MEMORANDUM AND ORDER

RUSSELL, District Judge.

## I. PROCEDURAL HISTORY

This matter is before the court on a Motion for Summary Judgment by defendant General Drivers, Warehousemen and Helpers, Local 89 (Local 89) (Dkt. 26). The defendants, Dallas & Mavis Forwarding Co. (D & M) and Provincial American Truck Transporters (PATT), filed a response thereto (Dkt. 28). The plaintiffs filed a response in opposition to summary judgment (Dkt. 31). Local 89 filed a reply to the aforementioned responses (Dkt. 34) and a Suggestion of Supplemental Basis for Dismissal of Action (Dkt. 37) to which plaintiffs and D & M filed responses, (Dkts. 38 & 39, respectively).

Oral argument was held before W. David King, United States Magistrate Judge, on April 29, 1993. On March 8, 1994, Judge King entered a recommendation denying the motion for summary judgment (Dkt. 47). On March 31, 1994, the Hon. Ronald E. Meredith adopted the magistrate's report and denied Local 89's Motion for Summary Judgment (Dkt. 49). On November 16, 1994, the case was reassigned to the Honorable Thomas B. Russell (Dkt. 51). Pursuant to a telephonic conversation and order entered subsequent thereto (Dkt. 79), the issue of summary judgment is again before the court. Oral arguments were held February 17, 1995. For the reasons set forth below, the court's previous denial for summary judgment is hereby reversed, and summary judgment is granted for Local 89, D & M and PATT.

## II. INTRODUCTION

The plaintiffs are employees of D & M and are employed at Ford Motor Company's Kentucky Truck Plant (KTP) in Louisville, Kentucky. The defendant, Local 89, is the labor union which is the sole representative for the plaintiffs as members of that union with regard to the terms and conditions of their collective bargaining agreement. The defendant, D & M, is an Indiana corporation engaged in interstate trucking business with one of its locations at KTP. The defendant, PATT, is an Illinois corporation engaged in the business of interstate trucking with one of its locations at KTP. PATT is the successor to Allied Systems, Inc., (Allied); Allied is formerly known as Motor Convoy, Inc.

The National Master Automobile Transporters Agreement and Central/Southern-Eastern Areas Driveaway Supplemental Agreement (Agreement) covered the terms and conditions of employment for the plaintiffs as union members during the period of June, 1988, through May 31, 1991. All parties to this action were signatories to the agreement during the relevant time period.

Plaintiffs filed this action on March 29, 1991, seeking to vacate an Arbitration Opinion and Award dated December 14, 1990; or in the alternative, an award of monetary damages arising from the union's breach of fair representation. The underlying grievance proceeding of that Award commenced when the respective employers, D & M and Allied, requested that the National Automobile Transporters Joint Arbitration Committee determine the respective seniority rights of the two groups of employees at KTP following realignment of the jobs at KTP. The National Committee deadlocked twice and the matter was submitted to the Board of Arbitration pursuant to the collective bargaining agreement.

## III. FACTS

KTP opened in Louisville in 1969. Delivery of Ford vehicles was awarded to Dealers Transport. Dealers Transport staffed the KTP terminal by a method in which employees "follow the work" from employer to employer as the company holding the contract for the work changed. Under this system, employees were entitled to keep working the same position at KTP even though a new employer was awarded the contract for their work.

In 1980, the traffic formerly handled by Dealers Transport at KTP was awarded to Motor Convoy. In 1986, KTP changed its method of awarding bids for the various jobs at KTP. It began requiring a "third-party bid" to be submitted separately for the yard and mounting operations.

In March of 1988, D & M was awarded traffic out of KTP for Ford's Upper Midwest Region, previously handled by Motor Convoy. Motor Convoy continued to do the yard and mounting work. A grievance was filed on behalf of Motor Convoy's employees when D & M replaced all of Motor Convoy's employees with D & M employees.

In April of 1988, as a result of that grievance, the National Committee ordered that the first fourteen slots on the seniority board for the upper midwest region at KTP be awarded to former Motor Convoy drivers. However, this decision was later reversed by the National Committee in October of 1988 after ·D & M employees filed a grievance.

In October of 1989, Ford solicited bids for the KTP shipping operations. Allied won the bid for the upper midwest traffic, replacing D & M. D & M won the bid for the rail traffic to the Western United States and Western Canada. D & M also won the third-party yard and mounting work, replacing Allied. A question arose about how the new realignment of truck traffic would work as far as application of·seniority and allocation of jobs in the truck driveaway and yard mounting operation at KTP.

The realignment of the traffic at KTP prompted the two employers, Allied and D & M, to submit a grievance to the National Joint Arbitration Committee to determine the applicability of the seniority provisions of the National Master Agreement with regard to their affected employees. The issue focused on Article 5 (concerning the "dovetailing" or merger of seniority rights) and Article 26 (governing the transfer of seniority).

In February 1990, Charles Spond, Local 89's representative, sent a telegram to Gordon Birdsall, who represented D & M in this matter, confirming that the National Committee was being convened to hear the cases

regarding the seniority status of D & M's employees at KTP.

In March of 1990, the issues were placed before the National Automobile Transporters Joint Arbitration Committee in a special meeting held in Arlington, Virginia. The issue was not resolved at this meeting. Thereafter, in late March of 1990, the issue was again addressed by the National Committee in an executive session at a meeting in Cambridge, Massachusetts. The following motion was presented to the Joint Committee:

Based upon the facts presented, the displaced Allied System yard employees shall be entitled to exercise their full terminal seniority to fill all yard positions at Dallas & Mavis Forwarding Co., Inc., Louisville, Kentucky Truck Plant Facility.

The issue deadlocked for the second time. As a result of the deadlock, the issue of the employee's seniority rights was to be submitted at a hearing before a Board of Arbitration.

Under the terms of Article 7, when a grievance is deadlocked by the Joint Committee the matter is processed to a Board of Arbitration in accordance with Article 7, § 9 of the National Agreement. A hearing before the Board of Arbitration is a *de novo* proceeding wherein the parties may present new witnesses and documents not previously presented at earlier joint arbitration hearings on the same matter. A deadlock by the National Committee reflects that there was no prevailing position, and thus the matter is referred to the Board of Arbitration. A motion presented and deadlocked in an executive session does not have the effect of limiting the Board of Arbitration's subsequent review or consideration of the matters presented to the National Committee.

Due to the two deadlocked decisions at the National Committee concerning the issue of the employees' seniority rights, a Board of Arbitration hearing was held in Louisville on September 24, 1990. The Board issued a Decision and Award in December, 1990, based upon evidence and arguments presented at the September hearing. The Board found that D & M violated the collective bargaining agreement by not merging the

seniority lists and offering jobs to Allied employees in its yard and mounting operations at KTP. The Board directed D & M to prepare a merged seniority list of its KTP employees and employees laid-off by Allied from yard and mounting jobs at KTP. The merged, or dovetailed, seniority list was to be drafted on the basis of KTP terminal seniorities as of March 5, 1990. Further the Board directed D & M to offer jobs in its third-party yard and mounting operations at KTP to employees on the list in order of seniority.

As a result of the 1990 Award, many of the plaintiffs were laid off once D & M complied with the Award. In February of 1991, the plaintiffs requested that the Board reconsider its decision. A Supplemental Award dated June 1991 affirmed the 1990 Award. Furthermore, the Board stated that the issue whether D & M drivers who handled traffic from the KTP to the upper midwest route were entitled to "follow their work" was not presented to the Board at the September 1990 hearing and therefore not addressed in the December Decision and Award.

The Supplemental Award dated June 28, 1991, was handed down by the same panel and it stated in pertinent part:

> Having read and carefully considered the arguments submitted in the supplemental briefs and reply briefs of the Union, Dallas & Mavis, and Allied Systems, the Board of Arbitration finds as follows:
>
> 1. The issue of whether Dallas & Mavis' Drivers who handled traffic from the KTP to the Upper Midwest are to be afforded the opportunity to follow their work (a) was not presented to this Board either during the arbitration hearing of September 24, 1990 or in the post-hearing briefs submitted to the Board by Dallas & Mavis, the Union, and/or Allied Systems, (b) is not within the scope of the issues decided by the Board in its Opinion and Award of 14 December 1990, and (c) lies beyond the scope of the Board's current jurisdiction to resolve disputes regarding the remedy directed in the Award of 14 December 1990.

D & M filed an action in the United States District Court for the Western District of Kentucky seeking to vacate the December 1990 Arbitration Award and Order which held that D & M had violated the collective bargaining agreement. The District Court granted summary judgment for the defendant, which was affirmed on appeal by the United States Court of Appeals for the Sixth Circuit. *See Dallas and Mavis Forwarding Co. v. General Drivers Warehousemen & Helpers,* 972 F.2d 129 (6th Cir.1992). On January 11, 1993, the Supreme Court of the United States denied D & M's petition for writ of certiorari, —— U.S. ——, 113 S.Ct. 973, 122 L.Ed.2d 128 (1992). Neither the District Court nor Circuit Court of Appeals addressed the specific issue raised by plaintiffs in this action concerning the alleged erroneous outcome of the arbitration due to Local 89's breach of its duty of fair representation.

Plaintiffs contend that Local 89 violated its duty of fair representation to them by the manner in which it presented its case at the Board of Arbitration hearing on September 24, 1990. The unfair representation, they claim, resulted in an erroneous award. Specifically, plaintiffs contend that Local 89 failed to represent plaintiffs' interests by failing to present arguments regarding the loss of the upper midwest routes on D & M's employees.

In plaintiffs' March 11, 1992, response in opposition to summary judgment, they state, that "[i]f the December 14, 1990, Arbitration Award, as modified by the June 28, 1991, Supplemental Award, is vacated by the United States Court of Appeals for the Sixth Circuit based upon the Board of Arbitration exceeding its authority or an erroneous interpretation of the underlying Collective Bargaining Agreement, then the present forced compliance with the Award (through hiring Allied employees to replace Plaintiffs) has caused a breach of contract by D & M" (Pls.' Mem. in Opp'n, Dkt. 31, p. 5).

Furthermore, plaintiffs conceded in this response that their claim of employer's breach in the present action is entirely dependent on the outcome of the senior action filed by D & M, stating:

> Finally, the issue of whether D & M has breached the underlying Collective Bargaining Agreement depends upon whether

the United States Court of Appeals for the Sixth Circuit ultimately finds that the underlying Arbitration Award interpreting and applying it is erroneous or not. If erroneous as Plaintiffs submit, then compliance therewith to date by D & M has clearly caused Plaintiffs to be financially damaged at the hands of Local 89 and their employer.

(Pls.' Mem. In Opp'n, Dkt. 31, pp. 5–6).

## IV. CONCLUSIONS OF LAW

### A. SUMMARY JUDGMENT

The jurisdiction and venue of this Court were properly invoked by the plaintiffs pursuant to 28 U.S.C. § 1337 and 29 U.S.C. § 185(a).

The rule for summary judgment as set forth in subdivision (c) of Section 56 states in pertinent part:

[Summary judgment is proper] if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed.Rule.Civ.P. 56(c) (1994).

■ In the seminal cases of *Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); and *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), the Supreme Court outlined the proper analysis to be employed by district courts when ruling on motions for summary judgment. The Supreme Court held that:

In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case

necessarily renders all other facts immaterial.

*Celotex*, 477 U.S. at 322, 106 S.Ct. at 2552.

In *Liberty Lobby*, the Court stated the test for summary judgment is the same as that for a directed verdict motion: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law," *Liberty Lobby*, 477 U.S. at 251–52, 106 S.Ct. at 2512. "Therefore, mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." 477 U.S. at 252, 106 S.Ct. at 2512.

■ As to the "materiality" of a fact, the substantive law identifies which facts are material. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." 477 U.S. at 248, 106 S.Ct. at 2510.

■ In *Celotex*, the Court held summary judgment was appropriate where, after ample time for discovery, the defendant argued that the plaintiff was unable to meet her burden of proof at trial. In reversing the Court of Appeals, the Court rejected the lower court's demand that the defendant put forth *evidence* in support of its request for summary judgment. The Court reasoned that the rule does not require evidence to be put forward by the moving party. Such is in conformance with the principal purposes of the summary judgment rule in isolating and disposing of factually unsupported claims. Since the plaintiff in *Celotex* was not able to provide the necessary evidence to prove a critical issue, summary judgment was appropriate. "Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of *evidentiary materials* listed in Rule 56(c), except the mere pleadings themselves, and it is from this list that one would normally expect the non-moving party to make the showing to which we have referred." *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553.

In *Street v. J.C. Bradford & Co.*, 886 F.2d 1472 (6th Cir.1990), the court stated that the trilogy of cases cited above embodied the following principles for the "new era" summary judgment practice:

1. Complex cases are not necessarily inappropriate for summary judgment.

2. Cases involving state of mind issues are not necessarily inappropriate for summary judgment.

3. The movant must meet the initial burden of showing the "absence of a genuine issue of material fact" as to an essential element of the non-movant's case.

4. This burden may be met by pointing out to the court that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case.

5. A court should apply a federal directed verdict standard in ruling on a motion for summary judgment. The inquiry on a summary judgment motion or a direct verdict motion is the same: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."

6. As on federal directed verdict motions, the "scintilla rule" applies, i.e., the respondent must adduce more than a scintilla of evidence to overcome the motion.

7. The substantive law governing the case will determine what issues of fact are material, and any heightened burden of proof required by the substantive law for an element of the respondent's case, such as proof by clear and convincing evidence, must be satisfied by the respondent.

8. The respondent ·cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must "present affirmative evidence in order to defeat a properly supported motion for summary judgment."

9. The trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact.

10. The trial court has more discretion than in the "old era" in evaluating the respondent's evidence. The respondent must "do more than simply show that there is some metaphysical doubt as to the material facts." Further, "where the record taken as a whole could not lead a rational trier of fact to find" for the respondent, the motion should be granted. The trial court has at least some discretion to determine whether the respondent's claim is "implausible."

(886 F.2d at 1479–80). Applying these standards, the defendants are entitled to summary judgment.

## B. THE SUBSTANTIVE LAW: UNFAIR REPRESENTATION

### 1. General Requirements of a § 301 claim

■ A hybrid claim involves two components: (1) the employer's breach of the collective bargaining agreement; and (2) the union's breach of the duty of fair representation. *Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 96 S.Ct. 1048, 47 L.Ed.2d 231 (1976); *Black v. Ryder/P.I.E. Nationwide, Inc.*, 15 F.3d 573 (6th Cir.1994); *VanDerVeer v. United Parcel Service*, 25 F.3d 403 (6th Cir.1994). The Supreme Court stated that in order "[t]o prevail against either the company or the Union, petitioners must not only show that their discharge was contrary to contract but must also carry the burden of demonstrating breach of duty by the Union." *Hines*, 424 U.S. at 570–71, 96 S.Ct. at 1059. The two claims are interdependent. *DelCostello v. International Bhd. of Teamsters*, 462 U.S. 151, 164, 103 S.Ct. 2281, 2290, 76 L.Ed.2d 476 (1983).

■ The Sixth Circuit also imposes the requirement that the plaintiff prove that the union's breach of its duty tainted the arbitration decision of the hearing panel. *Wood v. Int'l Board of Teamsters*, 807 F.2d 493 (1986). That is, the plaintiff must prove that there is a *substantial* reason to believe that a union's breach of duty contributed to the (allegedly) erroneous outcome of the contractual proceedings. 807 F.2d at 501.

■ The Sixth Circuit stated that a "plaintiff must meet the onerous burden of proving that the grievance process was 'seriously

flawed by the union's breach of its duty to represent employees honestly and in good faith and without invidious discrimination or arbitrary conduct.'" *Black*, 15 F.3d at 585 [quoting *Hines*, 424 U.S. at 570, 96 S.Ct. at 1059]. Where the employee alleges that the union *failed* to present favorable evidence during the process, such "may constitute a breach *only if* that evidence probably would have brought about a different decision." *Black*, 15 F.3d at 585 (emphasis added) [quoting *Taylor v. Ford Motor Co.*, 866 F.2d 895, 898–99 (6th Cir.1989) ].

**2. The Union's duty of fair representation**

■ In *Vaca v. Sipes*, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967), the Supreme Court held a union has a duty to represent the bargaining unit employees fairly and impartially in disputes arising out of an employer's failure to comply with its collective bargaining agreement. That duty is violated if the union acts in one of three ways: (1) arbitrarily, (2) discriminatorily, or (3) in bad faith. Plaintiff need not prove a breach of all three in order to state a claim of unfair representation. The three factors are "separate and distinct" routes by which the union may breach its duty. *Black*, 15 F.3d at 584.

**C. DISCUSSION**

■ The plaintiffs in this case failed to produce any evidence which shows that their employer, D & M, breached the collective bargaining agreement. Nowhere in the complaint filed by the plaintiffs is there an allegation of any contractual violation by the employer, D & M. Rather, plaintiffs claim that the employer *will* breach the collective bargaining agreement only upon a successful enforcement of the 1990 Arbitration Award.

The plaintiffs succinctly stated their theory in their response to Local 89's Motion for Summary Judgment: "The breach of the Collective Bargaining Agreement claim by plaintiffs against D & M as their employer arises from the company's legally forced compliance with the Arbitration Award, which is based upon an erroneous interpreta-

tion and application of the Agreement." (Dkt. 31, p. 5).

It is beyond cavil that without the requisite evidence of a breach by the employer, the plaintiffs in this action have no § 301 remedy. This Court is not persuaded that a prospective breach satisfies the first requirement for an unfair representation claim; i.e., breach by the employer.

■ Since enforcement of the Arbitration Award, as a matter of law, cannot constitute the breach of contract necessary to support a "hybrid-Section 301" action, the plaintiffs cannot maintain the present action, regardless of whether or not Local 89 allegedly breached its duty to plaintiffs. *Wood*, 807 F.2d at 502. Furthermore, even if the union breached its duty of fair representation to the employees, the union owes no damages to plaintiffs, if the employer did not breach the collective bargaining agreement. *Id.*

Most disputes which ultimately end in a hybrid claim under § 301 are precipitated by an employer's breach of contract. The plaintiffs' argument that the enforcement of the Award will cause the breach is certainly a novel one and not previously encountered. It is difficult to ignore the desire to find a means by which to redress the plaintiffs' claim of unfair representation. However, the court is mindful that such a desire is not sufficient to a sustain a § 301 claim. For this reason, summary judgment must be granted.

This Court also realizes it is reversing a previous order which overruled Local 89's Motion for Summary Judgment (Dkt. 49). That order may have correctly found there was a material issue as to whether the union breached its duty of fair representation; however, it did not address the other requirement of a § 301 claim—the employer's breach of the collective bargaining agreement.

There is no proof of the employer's breach of the collective bargaining agreement. To accept the plaintiffs' argument, this Court would have to expand greatly the holding in *Hines* and essentially create a new cause of action.

Courts should be reluctant to intervene in collective bargaining agreements and the arbitration process. To be too eager in creating a new cause of action would undermine the grievance processes.

Therefore, this Court finds that since there was no breach of the contract, there is no § 301 remedy. Summary judgment will be entered for Local 89, D & M and PATT.