Jack SOUTHWARD, et al.,
Plaintiffs–Appellees,

v.

SOUTH CENTRAL READY MIX
SUPPLY CORPORATION,
Defendant–Appellant.

No. 92–4062.

United States Court of Appeals,
Sixth Circuit.

Argued Sept. 20, 1993.

Decided Oct. 12, 1993.

David W. Douglas (argued and briefed), Fisher & Douglas, Columbus, OH, for plaintiff-appellee.

Mark E. Lutz (argued and briefed), Denlinger, Rosenthal & Greenberg, Cincinnati, OH, for defendant-appellant.

Before: MILBURN and NELSON, Circuit Judges; and GILMORE, Senior District Judge.*

MILBURN, Circuit Judge.

In this interlocutory appeal which we granted under 28 U.S.C. § 1292(b), defendant appeals the district court's denial of its motion for reconsideration of defendant's second motion for summary judgment in an action that plaintiffs brought to enforce the terms of a collective bargaining agreement between plaintiffs' union and their former employer. The district court asserted subject matter jurisdiction under § 301 of the Labor Management Relations Act, 29 U.S.C. § 185. On appeal, the issue is whether a purchaser of assets who substantially continues the business operations of the seller, but who is not an alter ego of the seller and has not expressly or impliedly assumed the seller's collective bargaining agreement, may nevertheless be bound by the terms of that agreement. For the reasons that follow, we vacate and remand.

## I.

### A.

Until December 1985, all plaintiffs in this action were employed as readymix concrete truck drivers by Arrow Concrete Company, a division of Ocotillo Plastics, Inc. ("Arrow"). Arrow employed plaintiffs at its McKinley Avenue and Port Columbus plants in Columbus, Ohio. Plaintiffs were represented for the purpose of collective bargaining by Teamsters Union, Local No. 284 ("Teamsters"). On July 1, 1985, Arrow and the Teamsters entered into a collective bargaining agreement ("CBA"), which was to be effective through June 30, 1988. The CBA covered all drivers of readymix concrete trucks and excluded all other Arrow employees. The CBA contained a successorship clause, which provided that the CBA "shall be binding not only upon [Arrow] and the [Teamsters], but also upon any individual, partnership, or corporation who shall succeed [Arrow] or the [Teamsters] in carrying on the business." J.A. 16.

On December 12, 1985, Arrow informed the Teamsters that Arrow was selling certain assets to defendant, South Central Ready Mix Supply Corp. ("South Central"). On December 17, 1985, the Teamsters learned that all Arrow employees would be terminated, that South Central had not agreed to be bound by the terms and conditions of the CBA, that wages, benefits, and working conditions would be substantially altered by South Central, and that former Arrow employees would have to complete applications for consideration for employment with South Central.

On December 19, 1985, South Central purchased from Arrow the readymix plants located at McKinley Avenue and Port Columbus, together with twenty-eight trucks and other operating equipment. South Central did not purchase the land on which the plants were located, the accounts receivable, fifteen mixer trucks, and five dump trucks. After its sale of assets, Arrow continued to exist through 1986. It kept land on which the McKinley and Port Columbus plants were located and leased this land to South Central. Arrow also kept a smaller readymix plant located in Reynoldsburg, Ohio. South Central's purchase of assets from Arrow was an arms-length transaction for good and valuable consideration. At the time of the sale of assets, Arrow and South Central had no common directors, officers, or shareholders, were incorporated in different states, and had different principal places of business.

In connection with the sale of assets, Arrow president Cyrus W. Spurlino terminated all of Arrow's salaried and hourly employees effective December 21, 1985. South Central

---

* The Honorable Horace W. Gilmore, Senior United States District Judge for the Eastern District of Michigan, sitting by designation.

invited the terminated Arrow employees to submit applications for consideration of employment by South Central. Before the sale of assets, Arrow employed thirty-one readymix truck drivers represented by the Teamsters. On December 23, 1985, South Central hired twelve readymix truck drivers previously employed by Arrow. In hiring these employees, South Central did not observe the seniority provisions of the CBA between Arrow and Teamsters and used different terms and conditions than those contained in the CBA.

None of the remaining drivers formerly employed by Arrow were ever hired by South Central. The readymix concrete business in Columbus, Ohio, is a seasonal industry. Employment levels traditionally declined as the winter season approached and then increased with the return of warm weather. Reflecting the seasonal nature of employment, the CBA between Arrow and the Teamsters provided for a voluntary layoff procedure for the period December 1 to March 31. The twelve readymix drivers hired by South Central in December 1985 constituted its initial work force for the winter period. On December 20, 1985, South Central advised unsuccessful job applicants that South Central would be adding an additional eight to twenty drivers during the next three months as the weather improved. South Central did not hire its full complement of twenty-eight drivers until March 11, 1986, but none of the additional drivers hired had been employed by Arrow. South Central granted the Teamsters recognition as the bargaining representative for its drivers at its McKinley Avenue and Port Columbus plants on December 23, 1985. South Central and the Teamsters met to negotiate the terms of a new CBA on six occasions between January 10, 1986, and April 28, 1986, but they did not reach an agreement. On April 10, 1986, the Teamsters began a strike against South Central. All of the former Arrow drivers hired by South Central ceased working in connection with the strike. Between April 10, 1986, and April 22, 1986, South Central hired ten more drivers, none of whom were former Arrow employees.

Immediately before the December 1985 sale of assets, Arrow employed ten salaried employees. Following the sale of assets, nine of the salaried employees were hired by South Central. However, four of these employees were terminated on February 11, 1986. Immediately before the December 1985 sale of assets, Arrow employed eight hourly employees not represented by the Teamsters. Following the sale of assets, all eight were hired by South Central. However, two of these employees were terminated on January 15, 1986. As of April 1, 1986, South Central's Columbus payroll register listed forty active employees. Twenty-one of these employees were former Arrow employees.

Arrow's principal product was readymix concrete. South Central's principal product was also readymix concrete. South Central assumed Arrow's supply contracts with Dugan and Meyers and Complete General Construction Company. South Central also supplied concrete to other customers formerly supplied by Arrow. South Central, however, negotiated its own terms and applied its own credit requirements in deciding whether to serve these customers.

### B.

On December 18, 1985, the Teamsters filed a grievance against Arrow alleging that its sale of assets to South Central was in violation of the CBA. On December 20, 1985, the Teamsters also filed a complaint against Arrow in federal district court seeking a temporary restraining order and preliminary injunction to block the sale to South Central and maintain the status quo pending arbitration. On December 27, 1985, the request for a temporary restraining order was withdrawn on the ground of mootness in that the transfer of assets which the Teamsters sought to restrain had in fact already occurred. On March 10, 1986, a hearing was held before an arbitrator on the grievance filed by the Teamsters against Arrow. The arbitrator issued his award denying the Teamsters' grievance pertaining to the sale of assets. The arbitrator found that the CBA did not impose upon Arrow a duty to

require South Central to assume the CBA in the event of a sale of assets.

On January 21, 1986, the Teamsters filed an unfair labor practice charge alleging that South Central had violated the National Labor Relations Act ("Act") by refusing to honor the terms of the CBA between Teamsters and Arrow. On February 20, 1986, the NLRB regional director notified the Teamsters that the NLRB's investigation had failed to establish a violation of the Act. The regional director determined that South Central had no obligation to honor the terms of the CBA between the Teamsters and Arrow. The Teamsters appealed to the general counsel of the NLRB but the general counsel denied the Teamsters' appeal. The general counsel found that South Central clearly enunciated its terms and conditions of employment prior to hiring any of the predecessor's drivers and concluded that South Central was not legally bound to honor the previous CBA.

On April 9, 1986, the Teamsters filed a second unfair labor practice charge alleging that South Central unlawfully refused to hire certain former Arrow drivers because of their membership in the union. The NLRB regional director refused to issue a complaint against South Central, finding no evidence that South Central's hiring decisions were motivated by unlawful considerations. The Teamsters appealed to the general counsel of the NLRB, but the general counsel denied the Teamsters' appeal. The general counsel concluded that South Central did not discriminate against union members in hiring its employees.

On May 30, 1986, South Central filed a petition with the NLRB for an election to determine whether its employees wished to be represented by the Teamsters. The NLRB held a hearing on this petition. At that hearing, the Teamsters stipulated that the contract between Arrow and the Teamsters was not a bar to an election. On August 8, 1986, the NLRB held an election, and employees voted against representation by the Teamsters by a vote of 29 to 5. The NLRB certified the results of the election, and the Teamsters did not represent South Central employees at any time after August 18, 1986.

## C.

On December 10, 1986, plaintiffs, nine of the twelve Arrow drivers hired by South Central and fifteen of the nineteen Arrow drivers who were not hired by South Central, filed this action in the court of Common Pleas of Franklin County, Ohio, alleging that South Central had an obligation under Ohio law to assume the ·CBA. On January 5, 1987, South Central removed the action to United States District Court for the Southern District of Ohio. On June 1, 1987, South Central filed its first motion for summary judgment on the grounds that neither Ohio nor federal law required South Central to assume the seller's CBA and that plaintiffs' action was procedurally defective. On February 1, 1988, the district court issued a memorandum and order dismissing plaintiffs' claim under Ohio law, but holding that plaintiffs' action was not procedurally defective and that federal law might require South Central to honor the terms of the seller's CBA under the authority of *Wood v. International Brotherhood of Teamsters, Chauffeurs, Warehousemen, and Helpers of America, Local 406*, 807 F.2d 493 (6th Cir.1986), *cert. denied,* 483 U.S. 1006, 107 S.Ct. 3232, 97 L.Ed.2d 738 (1987) ("*Wood*").

On February 26, 1988, South Central filed its second motion for summary judgment on the ground that federal law did not require it to honor the CBA in the circumstances of this case. South Central argued that it was not the alter ego of the seller, that it had not expressly or impliedly assumed the seller's contract, and that it could not be bound to the contract under a "substantial continuity" test because there was no continuity of identity between South Central's and Arrow's business operations. Furthermore, South Central argued that even if there was continuity of identity, that fact alone would not require South Central to abide by Arrow's CBA. On October 25, 1988, the district court issued a memorandum and order denying South Central's second motion for summary judgment but holding as a matter of law that South Central was not the alter ego of the

seller and had neither expressly nor impliedly assumed the seller's CBA. However, the district court found that there was a genuine issue of material fact as to whether there was substantial continuity between South Central's and Arrow's business operations and work force. Furthermore, the district court held that if there was substantial continuity of business operations, South Central would be bound by the terms of Arrow's CBA under the authority of the *Wood* case.

On November 22, 1991, the district court approved the final pretrial order in which the parties stated their claims and stipulated the facts of the case. Plaintiffs claimed that defendant South Central was obligated to honor the terms of the collective bargaining agreement between Arrow and the Teamsters when South Central purchased certain assets from Arrow in December 1985 and that South Central breached its obligations under that collective bargaining agreement by establishing different terms and conditions of employment. However, the parties stipulated that South Central was not the "alter ego" of Arrow and that South Central did not expressly or impliedly assume Arrow's collective bargaining agreement.

Also on November 22, 1991, South Central filed a motion for reconsideration of its second motion for summary judgment on the ground that "substantial continuity" was an insufficient basis for the imposition of a predecessor's CBA on a successor. On May 20, 1992, the district court, again relying on *Wood,* issued a memorandum and order denying South Central's motion for reconsideration of its second motion for summary judgment. On May 29, 1992, South Central filed a motion to amend the order to add the statement prescribed by 28 U.S.C. § 1292(b) for an interlocutory appeal, which the district court did by memorandum and order of July 10, 1992. On July 17, 1992, South Central filed a petition for permission to appeal under 28 U.S.C. § 1292(b), which this court granted on September 29, 1992.

## II.

■ Although we review a grant of summary judgment de novo to determine if there are any genuine issues of material fact, we review a *denial* of summary judgment under an abuse of discretion standard. *Pinney Dock & Trans. Co. v. Penn Cent. Corp.,* 838 F.2d 1445, 1472 (6th Cir.), *cert. denied,* 488 U.S. 880, 109 S.Ct. 196, 102 L.Ed.2d 166 (1988). An abuse of discretion exists when the reviewing court is firmly convinced that a mistake has been made. *See In re Bendectin Litigation,* 857 F.2d 290, 307 (6th Cir.1988), *cert. denied,* 488 U.S. 1006, 109 S.Ct. 788, 102 L.Ed.2d 779 (1989). "A district court abuses its discretion when it relies on clearly erroneous findings of fact, or when it improperly applies the law or uses an erroneous legal standard." *Black Law Enf. Officers Ass'n v. City of Akron,* 824 F.2d 475, 479 (6th Cir. 1987).

■ The district court relied on *Wood* for the proposition that a successor corporation may be bound by the substantive terms of a CBA negotiated and signed by its predecessor even though the successor is not the alter ego of the predecessor and the successor has not expressly or impliedly assumed the predecessor's CBA. In *Wood,* Kroger's transferred one of its warehouses to Hamady in a lease-sale transaction. After the transaction, Hamady hired about half of Kroger's former employees of the warehouse but not in order of seniority. The employees filed an action claiming, among other things, that Hamady was bound by the CBA negotiated by Kroger's. After the employee-plaintffs presented their evidence at trial, Hamady moved for a dismissal, and the district court granted the dismissal finding that Hamady was not a "successor" to the contract and was not obligated to assume the CBA.

On the appeal in *Wood,* this court summarized the district court's reasoning and affirmed the dismissal. We recognized that the district court "addressed in turn each of the three exceptions to the general rule that a new employer cannot be held to the terms of a former employer's collective bargaining agreement." *Wood,* 807 F.2d at 498. The district court in its opinion stated the three "exceptions" as follows:

> Under federal common law, there are three circumstances in which a new employer might be held to the terms of the

former employer's collective bargaining agreement. First, the new employer may be found to be the "alter ego" of the predecessor. Second, the new employer may be found to have expressly or impliedly assumed the obligations of the predecessor's contract. Finally, a court may find that there is a "substantial continuity" in the business enterprises and that the new employer *is obligated to arbitrate* under the terms of the previous employer's contract.

*Wood v. International Bhd. of Teamsters,* No. G83–742 CA (W.D.Mich. Sept. 25, 1985); J.A. 98 (district court opinion dismissing Hamady) (emphasis added). In *Wood,* we noted that the district court found that Hamady was not an alter ego of Kroger's and that Hamady had not expressly or impliedly assumed the contract. 807 F.2d at 498–99. As to the third "exception," we stated that

> • [t]he third circumstance in which a new employer may be held *bound by its predecessor employer's contract* is where there is "substantial continuity" of business operations, resulting in successor liability on the part of the new employer.

*Id.* at 499 (emphasis added). We noted that the district court found that Hamady's operation of the warehouse was not a substantial continuation of Kroger's operation. *Id.* at 500. After stating the district court's reasoning, we affirmed the district court's "decision finding that Hamady was not bound by the collective bargaining agreement between Kroger and the Union and granting Hamady's motion to dismiss." *Id.*

Although the language about the third "exception" in *Wood,* standing alone, may be subject to the interpretation given to it by the district court in the present case, this language *cannot* be given that interpretation when viewed in conjunction with the Supreme Court decisions and other decisions of this court relating to successor liability for a predecessor's CBA. The Supreme Court and this court's decisions, issued both before and after *Wood,* contradict the language about the third "exception" in *Wood.* Indeed, we later correctly explained that "a successor at most may be required to bargain with the prior union." *NLRB v. Fuller-*

*ton Transfer & Storage Ltd., Inc.,* 910 F.2d 331, 336 n. 6 (6th Cir.1990). Furthermore, in a case decided after our decision in *Wood,* the Supreme Court observed that a successor "is not bound by the substantive provisions of the predecessor's collective-bargaining agreement." *Fall River Dyeing & Finishing Corp. v. NLRB,* 482 U.S. 27, 40, 107 S.Ct. 2225, 2234, 96 L.Ed.2d 22 (1987).

 Our review of the Supreme Court's decisions relating to a successor employer's responsibilities under a predecessor's CBA leads us to conclude that in order to be bound by the substantive terms of that agreement, the successor must be the "alter ego" of the predecessor, or the successor must have voluntarily assumed the obligations of the agreement. A successor employer cannot be bound by the substantive terms of a collective bargaining agreement negotiated and entered into by its predecessor merely because the successor's business is a "substantial continuation" of the predecessor's business. If the successor's business is a "substantial continuation" of its predecessor's business, but the successor is not the "alter ego" of its predecessor and has not voluntarily assumed the obligations of its predecessor's CBA, then *at most* the successor will have a duty to recognize and bargain with the union that represented its predecessor's employees and arbitrate any disputes. Four Supreme Court decisions have established the contours of a successor corporation's responsibilities relating to its predecessor's CBA. *John Wiley & Sons, Inc. v. Livingston,* 376 U.S. 543, 84 S.Ct. 909, 111 L.Ed.2d 898 (1964); *NLRB v. Burns Int'l Sec. Servs., Inc.,* 406 U.S. 272, 92 S.Ct. 1571, 32 L.Ed.2d 61 (1972); *Howard Johnson Co., Inc., v. Detroit Local Joint Executive Bd.,* 417 U.S. 249, 94 S.Ct. 2236, 41 L.Ed.2d 46 (1974); *Fall River Dyeing & Finishing Corp. v. NLRB,* 482 U.S. 27, 107 S.Ct. 2225, 96 L.Ed.2d 22 (1987).

*Wiley* established that in appropriate circumstances a successor employer will have a duty to arbitrate under the pre-existing CBA. In *Wiley* a union sued a successor corporate employer pursuant to § 301 of the Labor Management Relations Act, 29 U.S.C. § 185, to compel arbitration under a CBA

which the union had made with the predecessor corporate employer before the predecessor merged with the successor. The Supreme Court held that because of the central role of arbitration in effectuating national labor policy, a merger "does not automatically terminate all rights of the employees covered by the [pre-existing collective bargaining] agreement," but rather "in appropriate circumstances ... the successor employer may be required *to arbitrate* with the union under the agreement." *Wiley,* 376 U.S. at 548, 84 S.Ct. at 914 (emphasis added). The circumstances would be "appropriate" for imposing the duty to *arbitrate* on the successor employer if there was a "substantial continuity of identity in the business enterprise before and after a change [in ownership or corporate structure]." *Id.* at 551, 84 S.Ct. at 915.

*Burns* established that a successor employer is not bound to the substantive terms of a pre-existing CBA, even though the successor employer in appropriate circumstances has a duty to recognize and bargain with the union representative for the predecessor's employees. In *Burns,* Wackenhut Corp. had a contract with Lockheed Aircraft Service Co. to provide plant protection services, and Wackenhut entered into a CBA with the union representing the guards it employed to provide these services. Shortly thereafter, Wackenhut's contract with Lockheed expired, and Lockheed awarded a new contract to Burns International Security Services, Inc., which retained 27 of the Wackenhut guards and brought in 15 of its own guards from other locations. The union that had represented Wackenhut's guards filed an unfair labor practice charge because Burns refused to bargain with the union and would not honor the pre-existing CBA.

■ The Supreme Court held that Burns did have a duty to bargain with the union because it represented a majority of its employees in the bargaining unit, but Burns was not bound by the substantive terms of the CBA to which it had in no way agreed. *Burns,* 406 U.S. at 277–90, 92 S.Ct. at 1577–84. The Supreme Court found that *Wiley* was not controlling for three reasons. *Id.* at 285–87, 92 S.Ct. at 1581–82. First, *Wiley*

held only that the *agreement to arbitrate* survived the merger; the question as to what extent the successor was bound by the terms of the pre-existing CBA was left to the arbitrator, subject to judicial review. Secondly, *Wiley* was a § 301 suit to compel arbitration as opposed to an unfair labor practice proceeding. Finally, *Wiley*'s narrow holding dealt with a merger occurring against a background of state law that imposed liability on the successor corporation for obligations of the disappearing predecessor corporation, whereas in *Burns* there was no merger or any transaction whatsoever between Burns and Wackenhut. The Supreme Court recognized that imposing the substantive terms of the predecessor's CBA on a successor employer "may result in serious inequities."

A potential employer may be willing to take over a moribund business only if he can make changes in corporate structure, composition of the labor force, work location, task assignment, and nature of supervision. Saddling such an employer with the terms and conditions of employment contained in the old collective-bargaining contract may make these changes impossible and may discourage and inhibit the transfer of capital.

*Id.* at 287–88, 84 S.Ct. at 1582. However, some successor employers might find it advantageous to observe the predecessor's CBA and wish to assume it. Therefore, if a successor voluntarily assumes the obligations of its predecessor's CBA, then it will be bound by its predecessor's CBA. *Id.* at 291, 84 S.Ct. at 1584. "Such a duty does not, however, ensue as a matter of law from the mere fact that an employer is doing the same work in the same place with the same employees as his predecessor." *Id.*

*Howard Johnson* reaffirmed the Burns holding and further limited *Wiley.* In *Howard Johnson,* the defendant employer had purchased the restaurant and motel of its franchisee and leased the real property on which these assets were located from the franchisee. The franchisee's employees were covered by a CBA, which included a clause purporting to bind the franchisee's successors and assigns. The union that had represented the franchisee's employees brought an

action against Howard Johnson under § 301 to compel arbitration. The Supreme Court held that whether a suit is brought under § 301 or as an unfair labor practice charge is irrelevant, notwithstanding the contrary indication of *Burns,* and held that Howard Johnson could not be compelled to arbitrate even under *Wiley. Howard Johnson* 417 U.S. at 255–57, 262–65, 94 S.Ct. at 2239–41, 2243–45. The Court explained that *Wiley* involved a merger where the predecessor ceased to exist, whereas *Howard Johnson* involved a sale of some assets where the predecessor was still a viable entity. *Id.* at 257–59, 94 S.Ct. at 2241–42.

■ This distinction made a difference for two reasons. First, where the successor retains the predecessor's employees as a result of a merger, there is a background of state law that imposes liability on a successor for the obligations of the predecessor. Thus, binding Wiley to the CBA "may have been fairly within the reasonable expectations of the parties." *Id.* at 257, 94 S.Ct. at 2241. But where the transaction involves only a purchase of assets, there is no similar background of state law and, thus, no similar expectations. Second, the disappearance of the predecessor in *Wiley* meant the employees would have no means of enforcing the CBA's vested rights or promises if the successor was not required to arbitrate. However, in *Howard Johnson* the predecessor remained a viable entity, so there was a realistic remedy against the predecessor.

■ Since the Court in *Wiley* held that the successor did not have to *arbitrate* "unless there was 'substantial continuity of identity in the business enterprise,'" Howard Johnson could not be compelled to arbitrate because there was no "substantial continuity in the identity of the work force across the change in ownership." *Id.* at 263, 94 S.Ct. at 2244 (quoting *Wiley,* 376 U.S. at 551, 84 S.Ct. at 915). Howard Johnson had only hired nine of its predecessor's fifty-three employees. Therefore, the claims which the union sought to compel Howard Johnson to arbitrate related to the rights of the predecessor's employees who were not hired. The Court decided that this remedy was "completely at odds with the basic principles [of]

*Burns,"* in that *"Burns* establishe[d] that Howard Johnson had the right not to hire any of the former ... employees, if it so desired." *Howard Johnson,* 417 U.S. at 261–62, 94 S.Ct. at 2242–43.

The Court noted that *Howard Johnson* was not a case where the successor employer was the "alter ego" of the predecessor employer. Where the successor is the "alter ego," the successor is bound by the predecessor's CBA because the successor is really the same employer. *Id.* at 259 n. 5, 94 S.Ct. at 2242 n. 5.

In a case decided after this court's *Wood* decision, the Supreme Court reaffirmed *Burns'* central holding:

> We observed in *Burns* that, although the successor has an obligation to bargain with the union, it "is ordinarily free to set initial terms on which it will hire the employees of a predecessor," 406 U.S., at 294, 92 S.Ct., at 1585, and it is not bound by the substantive provisions of the predecessor's collective-bargaining agreement. *Id.,* at 284, 92 S.Ct., at 1580.

*Fall River,* 482 U.S. at 40, 107 S.Ct. at 2234. *Fall River* also held that a successor employer has the duty to bargain with the union representing its predecessor's employees if there is a "substantial continuity" between the predecessor's and the successor's enterprises. *Id.* at 43–47, 107 S.Ct. at 2236–38.

Decisions of this court, like those of the Supreme Court, have repeatedly recognized that a successor corporation may be bound by the substantive terms of its predecessor's CBA *only if* the successor is the alter ego of the predecessor or the successor has expressly or impliedly assumed the obligations of its predecessor's contract.

In a case decided while *Burns* was before the Supreme Court, we held that a successor employer could not be ordered to honor the CBA of its predecessor. *See NLRB v. Interstate 65 Corp.,* 453 F.2d 269 (6th Cir.1971). After deciding that the respondent corporation was a successor employer and, thus, duty-bound to recognize and bargain with the union, we addressed the issue of whether an NLRB order could be enforced requiring the successor employer to honor the CBA en-

tered into by the union and the predecessor employer. We first noted that the issue was currently before the Supreme Court and then held that a successor employer was not bound by the pre-existing CBA.

> We agree with the Second Circuit's resolution of this issue in *Burns*. That court decided the Board had exceeded its powers in ordering a successor employer to honor a collective bargaining contract it had not been a party to. The Board had never, before *Burns*, found such requirement to exist and we see no change in case law or statutory law which would permit the Board to suddenly reverse itself on this question.

*Id.* at 275–76 (citations omitted). The Supreme Court's decision in *Burns* shows that our conclusion in *Interstate 65* was correct.

In a case decided after *Burns* and *Howard Johnson*, this court recognized that although a successor in some circumstances has a duty to bargain with the union, it does not have any duty to honor the terms of its predecessor's CBA. *Anderson v. Ideal Basic Industries*, 804 F.2d 950 (6th Cir.1986). In *Anderson*, Ideal Basic Industries sold a cement plant to Moore McCormack, and Moore hired all of Ideal's former cement plant employees but did not assume the CBA between Ideal and the union representing those employees. Some of the employees brought an action alleging, among other things, that the union had breached its duty of fair representation by failing to impose the terms of Ideal's CBA on the successor, Moore. This court found no breach of the union's duty of fair representation:

> [C]ase law supports the Union's position regarding the enforceability of the successorship clause of the collective bargaining agreement. Although a successor employer may be compelled to bargain with retained employees over the terms of a new collective bargaining agreement, the successor is under no duty to assume the predecessor's obligations under a collective bargaining agreement or even to hire the employees of the previous owner. *NLRB*

*v. Burns International Security*, 406 U.S. 272, 92 S.Ct. 1571, 32 L.Ed.2d 61 (1972). *Anderson*, 804 F.2d at 953.

After the Supreme Court's decision in *Fall River* (a case decided after our decision in *Wood*), this court again recognized the distinction between the duty to bargain and a duty to honor the terms of the predecessor's labor agreement. *See NLRB v. Fullerton Transfer & Storage Ltd.*, 910 F.2d 331 (6th Cir.1990). In discussing whether a back pay order could be enforced against the owners of a corporate employer and a related corporation we noted:

> The successorship doctrine is often confused with the alter ego doctrine. The successorship doctrine is used to determine whether a new employer has an obligation to bargain when there is a bona fide sale of the employing company. A bona fide sale is found when there is "any substantial change in ... ownership or management." *See Howard Johnson*, 417 U.S. at 259 n. 5, 94 S.Ct. at 2242 n. 5. Although a successor at most may be required to bargain with the prior union, a new corporation that is the alter ego of the employer it replaced will be held to all of the prior employer's agreements and obligations.

*Fullerton Transfer*, 910 F.2d at 336 n. 6.; *see also Kessel Food Mkts., Inc. v. NLRB*, 868 F.2d 881, 889 (6th Cir.) (since union did not show substantial continuity, NLRB "properly refused to impose successor status and the resulting bargaining obligation on [second employer]"), *cert. denied*, 493 U.S. 820, 110 S.Ct. 76, 107 L.Ed.2d 43 (1989); *Landmark Int'l Trucks, Inc. v. NLRB*, 699 F.2d 815, 818 (6th Cir.1983) ("successor employer ... had a duty to recognize and bargain with [union], though it was not bound by the terms of the collective bargaining agreement between [predecessor and union]").

Other circuits have also recognized that a successor who is not the alter ego of its predecessor and who has not expressly or impliedly assumed the predecessor's CBA cannot be bound to the substantive terms of that agreement. *New England Mechanical, Inc. v. Laborers Local Union 294*, 909 F.2d 1339, 1342 (9th Cir.1990) ("In general, if an employer takes over another business, the

employer is not bound by its predecessor's collective bargaining agreement. . . . At most, the employer will be required to bargain with any union that the predecessor employer had recognized."); *Esmark, Inc. v. NLRB*, 887 F.2d 739, 750 (7th Cir.1989) ("successor is not bound to a collective bargaining agreement executed by the prior employer"); *International Union of Elec., Radio and Mach. Workers v. NLRB*, 604 F.2d 689, 693 (D.C.Cir.1979) (Although "successor employer is bound to recognize and bargain with the representative of his employees, . . . successor is not bound by the predecessor's bargaining agreement and is free to negotiate his own contract."); *Sullivan Indus. v. NLRB*, 957 F.2d 890, 895 (D.C.Cir.1992) ("While a successor has a duty to bargain with an incumbent union, it is not bound by the substantive terms of the previously negotiated collective-bargaining agreement."); *Sheet Metal Workers Int'l Assoc. v. Arizona Mechanical & Stainless, Inc.*, 863 F.2d 647, 651 (9th Cir.1988) ("although a 'successor' employer may have a duty to bargain with the union recognized by its predecessor, it is not bound by the substantive terms of its predecessor's CBA unless it assumes or adopts those obligations").

In the present case, plaintiffs claim that defendant South Central was obligated to honor the terms of a collective bargaining agreement between Arrow and the union that represented plaintiffs when South Central purchased certain assets from Arrow in December 1985, and that South Central breached its obligations under that collective bargaining agreement by establishing different terms and conditions of employment. A successor employer such as South Central is bound to the terms of its predecessor's collective bargaining agreement only if the successor has voluntarily assumed the agreement or the successor is the "alter ego" of the predecessor employer. The district court found as a matter of law, and the plaintiffs stipulated, that South Central did not expressly or impliedly assume Arrow's collective bargaining agreement and that South Central is not the "alter ego" of Arrow. Therefore, South Central was not obligated to honor the terms of Arrow's collective bargaining agreement, and the district

court should have granted summary judgment to defendant South Central.

## III.

For the reasons stated, the district court's order denying defendant's motion for reconsideration of its second motion for summary judgment is VACATED, and this case is REMANDED to the district court for entry of summary judgment for defendant South Central Ready Mix Corporation.