107 F.3d 12
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Carl Randall PIPPIN, Jr. (95-6341); Mark L. Grissinger
(95-6342); and Marc Kevin Runyan (95-6343),
Defendants-Appellants.
 Nos. 95-6341, 95-6342 and 95-6343.
 United States Court of Appeals, Sixth Circuit.
 Feb. 14, 1997.
 
 Before: BROWN, WELLFORD, and COLE, Circuit Judges.
 PER CURIAM.
 
 
 1
 Appellants Carl Pippin, Mark Grissinger, and Marc Runyan raise numerous issues contesting their convictions and sentences for a conspiracy to distribute cocaine in Johnson City, Tennessee, between 1985 and 1992. Having reviewed their arguments, we find no error and, therefore, AFFIRM.
 
 I.
 
 2
 On December 11, 1993, a federal grand jury returned a thirty-two count superseding indictment against the above-captioned defendants and other coconspirators. Count 1 of the indictment charged all three defendants with conspiracy to distribute and to possess with the intent to distribute cocaine in violation of 21 U.S.C. § 846. Counts 2, 10, 12, and 14 charged Runyan with interstate travel to promote the carrying on of an illegal activity in violation of 18 U.S.C. § 1952(a). Counts 3, 7, 9, and 17 charged Runyan with the use of a communication facility to facilitate a controlled substance offense in violation of 21 U.S.C. § 841(a)(1). Counts 16 and 18 charged Grissinger with the possession of cocaine with the intent to distribute in violation of 21 U.S.C. § 841(a). Counts 5 and 6 charged Pippin with the use of a communication facility to commit or facilitate the commission of a felony controlled substance offense in violation of 21 U.S.C. § 843(b).
 
 
 3
 The defendants proceeded to trial, during which the government introduced evidence that Ron Simon, a key government witness, had exported cocaine from Florida to Runyan in Johnson City. Simon testified that, from 1987 to 1992, he sold approximately ten kilograms of cocaine to Runyan for about $18,000 per eight to ten ounce shipment. Typically, Simon brought the cocaine to Johnson City where he delivered it to Runyan's home or office, or sometimes, to defendant Grissinger's home. On other occasions, Simon testified, he met Runyan in various cities outside Tennessee to conduct their business. When Simon did not hand-deliver the cocaine, he sent it through the U.S. Mail or through Federal Express. Runyan would pay part of the cost of the cocaine upon delivery and would either mail or wire the balance to Simon in Florida as the cocaine sold. The government introduced documentary evidence of numerous wire transfers of money sent by Runyan, Grissinger, and Pippin to Simon in Florida. Telephone records establish that these wire transactions were often immediately preceded by telephone calls from Simon to Runyan, and then to either Grissinger or Pippin. As to each wire transfer, Simon testified that the money sent to him was in exchange for cocaine. Simon also testified to meeting Pippin at a ball field to collect cash that Runyan owed for cocaine.
 
 
 4
 Another government witness, Michael Hammontree, purchased and sold cocaine to Runyan during the late eighties and early nineties. In particular, Hammontree testified to receiving two ounces of cocaine from Runyan in March, 1985, in Charleston, South Carolina, a trip on which Runyan was accompanied by others, including Pippin. Hammontree also testified to lending Runyan $9,000 to assist him in arranging a shipment of cocaine from Florida in February of 1989. Hammontree described other transactions, including meeting Pippin, who was driving Runyan's blue BMW, and giving Pippin $2,800 to pay Runyan for two ounces of cocaine. Hammontree recounted another incident in November 1991 that involved the sale of an ounce of cocaine, the quality of which was below Runyan's usual standards. Runyan blamed the poor quality on Grissinger, who allegedly prepared the bag. Hammontree accompanied Runyan to Runyan's office, where Grissinger was, and witnessed Grissinger begin preparing a new one-ounce bag. According to Hammontree, Runyan took over and completed the task.
 
 
 5
 The government presented testimony from others familiar with the activities of the defendants. Tony Onks, for example, associated with Runyan during the relevant time period and testified to being present at Runyan's home when Simon delivered cocaine. Onks also testified to observing defendant Pippin assist in cutting and packaging cocaine at the Marriot Hotel in Charleston, South Carolina, during the trip when Runyan sold two-ounces of cocaine to Hammontree. Another witness, Larry Sparks, observed Simon delivering cocaine to Grissinger's home and testified to Grissinger's and Runyan's participation in packaging the cocaine. Sparks also identified a gym bag, kept at Grissinger's house, that contained scales, baggies, cutting agents, and cocaine.
 
 
 6
 Following the trial, the jury returned guilty verdicts against all three defendants, although Grissinger was acquitted on the second count against him for possession with the intent to distribute cocaine. The district court, following objections to the appellants' presentence reports, set Runyan's adjusted base level at 30 under the sentencing guidelines, which included a two-level enhancement for exercising a managerial role in the offense under U.S.S.G. § 3B1.1(c) and a two-level enhancement for obstruction of justice pursuant to U.S.S.G. § 3C1.1. An offense level of 30, coupled with a criminal history in Category I, corresponds to a sentencing range of 97-121 months. At the sentencing hearing held on September 25, 1995, the district court sentenced Runyan to 97 months, the bottom of the range, and four years of supervised release.
 
 
 7
 As to Pippin, the district court fixed his adjusted offense level at 16, accounting for Pippin's role as a minor participant. With a criminal history in Category I, Pippin's range under the sentencing guidelines was 21-27 months. The district court sentenced him to 21 months incarceration and 3 years of supervised release.
 
 
 8
 With respect to Grissinger, the district court found his adjusted offense level to be 24, and his criminal history to be within Category I. The corresponding sentencing range is 51-63 months, and the court sentenced Grissinger to 51 months incarceration with four years of supervised release.
 
 
 9
 On appeal, the defendants challenge their convictions and their sentences. Runyan asserts that the district court erred by denying his motion for a new trial based on newly discovered evidence. Likewise, Pippin and Grissinger contest their convictions, arguing that the government presented insufficient evidence to establish their involvement in a conspiracy. As for sentencing, Runyan contends that the district court improperly imposed a two-level enhancement for his role in the offense and another two-level enhancement for obstruction of justice. In addition, Runyan joins Pippin and Grissinger in challenging the district court's refusal to reduce their sentences for acceptance of responsibility under U.S.S.G. § 3E1.1.
 
 II.
 A. Runyan and Newly Discovered Evidence
 
 10
 Pursuant to Rule 33 of the Federal Rules of Criminal Procedure, Runyan moved the district court for a new trial based on newly discovered evidence. FED.R.CRIM.P. 33. With his motion, Runyan submitted affidavits from allegedly disinterested individuals familiar with Runyan and with important government witnesses. Without explanation, Runyan asserts that these witnesses would have enabled him to advance "an entirely different defense." Brief for Appellant at 13.
 
 
 11
 The failure to investigate these potential witnesses, according to Runyan, constitutes ineffective assistance of counsel under the two-pronged standard set forth in Strickland v. Washington, 466 U.S. 668 (1984). In the present case, however, Runyan identified the affiants as potential witnesses to his counsel prior to trial. Brief for Appellant at 14. At trial, therefore, Runyan was aware that the testimony of the affiants would not be part of his defense strategy. Where facts alleged in support of an ineffective assistance of counsel claim were known to the defendant at the time of trial, such as the failure to investigate particular witnesses, the movant fails to satisfy the newly discovered evidence requirement of Rule 33. United States v. Garcia, 19 F.3d 1123, 1126 (6th Cir.1994) (citing United States v. Seago, 930 F.2d 482, 489 (6th Cir.1991)).
 
 
 12
 Aside from his ineffective assistance of counsel theory, Runyan also argues that a new trial is appropriate because facts in the affidavits constitute new evidence. Under Rule 33, a new trial is appropriate when evidence (1) was discovered after the trial; (2) could not have been discovered earlier through due diligence; (3) is material and not merely cumulative or impeaching; and (4) would likely produce an acquittal if the case were retried. United States v. Bragg, 23 F.3d 1047, 1050 (6th Cir.1994) (citing United States v. Barlow, 693 F.2d 954, 966 (6th Cir.1982)); United States v. O'Dell, 805 F.2d 637, 640 (6th Cir.1986). The defendant bears the burden of proving that a new trial is warranted. United States v. Pierce, 62 F.3d 818, 823 (6th Cir.), cert. denied, 116 S.Ct. 965 (1996) (citing United States v. Davis, 115 526, 531 (6th Cir.1994)).
 
 
 13
 After reviewing the affidavits, the district court denied Runyan's motion, finding the purportedly "new" evidence to be merely cumulative and impeaching. The decision to grant or deny a motion for a new trial based on newly discovered evidence rests within the sound discretion of the district court. United States v. Seago, 930 F.2d 482, 488 (6th Cir.1991). Accordingly, we review the district court's denial of such a motion for abuse of discretion only. Pierce, 62 F.3d at 823 (citations omitted). A district court abuses its discretion when it relies on clearly erroneous findings of fact, applies the law in an improper manner, or uses an erroneous legal standard. Romstadt v. Allstate Ins. Co., 59 F.3d 608, 615 (6th Cir.1995) (quoting Southward v. South Cent. Ready Mix Supply Corp., 7 F.3d 487, 492 (6th Cir.1993)); Performance Unlimited, Inc. v. Questar Publishers, Inc., 52 F.3d 1373, 1378 (6th Cir.1995).
 
 
 14
 Runyan fails squarely to address any of the four prongs of the O'Dell test. From examining the affidavits, we discern nothing therein that was not known before trial or could not have been discovered through due diligence. Indeed, two of the affiants actually testified at trial. The other affidavits provide either additional attacks against the credibility of the government's witnesses or statements from those willing to testify as to having never observed Runyan sell or buy drugs. Runyan's defense counsel, however, explored the credibility issue thoroughly at trial, including informing the jury that the witnesses were testifying under plea agreements with the government. Additional evidence of this sort is merely cumulative.
 
 
 15
 Consequently, we find that the district court did not abuse its discretion in denying Runyan's motion for a new trial.
 
 
 16
 B. Grissinger, Pippin and Sufficiency of the Evidence
 
 
 17
 To convict Grissinger and Pippin of conspiracy, the government was required to prove (1) an agreement to violate the drug laws, (2) knowledge and intent to join the conspiracy, and (3) participation in the conspiracy. United States v. Sanchez, 928 F.2d 1450, 1457 (6th Cir.1991) (citations omitted). Grissinger and Pippin contend that the government failed to present sufficient evidence at trial to meet its burden.
 
 
 18
 Sufficient evidence exists to support a criminal conviction if any rational trier of fact could accept the evidence as proving the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1980) (citing Woodby v. INS, 385 U.S. 276, 282 (1966)); United States v. Spears, 49 F.3d 1136, 1140 (6th Cir.1995). To make this determination, we view the evidence in a light most favorable to the prosecution and refrain from weighing the evidence and from assessing the credibility of witnesses. United States v. Welch, 97 F.3d 142, 148 (6th Cir.1996), petition for cert. filed, (U.S. Dec. 30, 1996) (96-7284); United States v. Collins, 78 F.3d 1021, 1030 (6th Cir.), cert. denied, 117 S.Ct. 189 (1996). The government establishes the "knowledge" element of the crime by showing that the defendant knew the essential object of the conspiracy--"[e]very member of a conspiracy need not be an active participant in every phase of the conspiracy, so long as he is a party to the general conspiratorial agreement." Sanchez, 928 F.2d at 1457 (quoting United States v. Christian, 786 F.2d 203, 211 (6th Cir.1986)). Furthermore, although the government must prove that the defendants agreed to participate in a joint criminal venture, the government need not show an express agreement. Id.; United States v. Ayotte, 741 F.2d 865, 867 (6th Cir.1984). Rather, the government can meet its burden with circumstantial evidence showing an implied agreement. United States v. Keeton, 101 F.3d 48, 52 (6th Cir.1996); United States v. Bourjaily, 781 F.2d 539, 544 (6th Cir.1986). It is sufficient to show a tacit or mutual understanding among the parties. Sanchez, 928 F.2d at 1457.
 
 
 19
 In the present case, Grissinger and Pippin argue that the government's evidence establishes only that the two were in close proximity to drugs and had an association with drug dealers, neither of which supports a conspiracy conviction. United States v. Pena, 983 F.2d 71, 72-73 (6th Cir.1993); see United States v. Villegas, 911 F.2d 623, 629 (11th Cir.1990). Evidence introduced at trial, however, shows that the defendants' activities exceeded mere proximity and an association with drug traffickers. In particular, the government introduced evidence that Grissinger allowed his house to be used as a place to weigh, cut, and package cocaine. In his testimony, Sparks described a gym bag that was kept at Grissinger's home and contained cutting agents, baggies, and cocaine. He further testified to observing Grissinger assist Runyan in packaging cocaine at his house. Likewise, Hammontree testified to observing Grissinger assist Runyan in preparing a one-ounce bag of cocaine after Hammontree contested the quality of the first bag allegedly prepared by Grissinger. In addition, the government presented evidence of suspicious wire transactions by Grissinger to Simon in Florida, and Simon testified that these funds were payment for cocaine.
 
 
 20
 With respect to Pippin, he, too, wired money to Simon in Florida, and Simon again testified that these wires were payment for cocaine. Additional evidence established that Runyan sent Pippin to collect money on one occasion from Hammontree and, on a different occasion, to hand-deliver an envelope containing cash to Simon to cover Runyan's cocaine debt. Pippin also accompanied Runyan on the 1985 trip to Charleston, South Carolina, where Runyan sold two-ounces of cocaine to Hammontree. A witness testified to observing Pippin assist Runyan in cutting and packaging cocaine during this same trip.
 
 
 21
 A rational jury could have found, based on this evidence, that the government carried its burden in proving the essential elements of the crime beyond a reasonable doubt.
 
 C. Sentencing
 1. Runyan's Role in the Offense
 
 22
 When sentencing Runyan, the district court concluded that Runyan qualified as an "organizer, leader, manager or supervisor" in the conspiracy based on his supervision of Pippin and Grissinger and, therefore, deserved a two-level enhancement pursuant to U.S.S.G. § 3B1.1(c). Whether Runyan was an "organizer, leader, manager, or supervisor" within the meaning of the sentencing guidelines is a question of fact, reviewable for clear error. Garcia, 19 F.3d at 1125 (citing United States v. Barrett, 890 F.2d 855, 867 (6th Cir.1989)). Clear error exists when a reviewing court "is left with a definite and firm conviction that a mistake has been made." Archer v. Macomb County Bank, 853 F.2d 497, 499 (6th Cir.1988).
 
 
 23
 When evaluating the role of a defendant for the purpose of § 3B1.1, relevant factors to consider include: (1) the exercise of decision-making authority; (2) the nature of participation in the commission of the offense; (3) the recruitment of accomplices; (4) the claimed right to a larger share of the fruits of the crime; (5) the degree of participation in planning or organizing the offense; (6) the nature and scope of the illegal activity; and (7) the degree of control and authority exercised over others. U.S.S.G. § 3B1.1 commentary at n. 3. The enhancement applies, even if the defendant did not directly employ or control a partnership or enterprise. United States v. Schultz, 14 F.3d 1093, 1099 (6th Cir.1994). Organizing and coordinating an interstate distribution scheme that brings drugs into the community is sufficient to qualify an individual as an "organizer" of criminal activity. Id.
 
 
 24
 In the present case, the evidence in the record indicates that Runyan played a key role in planning the enterprise. Specifically, the record reveals that Runyan arranged the financing to purchase cocaine from Simon. When Simon sought payment from Runyan, Runyan would ask Grissinger or Pippin to wire or otherwise deliver the money to Simon. On one occasion, Pippin hand-delivered money to Simon at Runyan's request and, on a different occasion, collected money owed to Runyan from Hammontree. Furthermore, Grissinger allowed Runyan access to his house where Simon would sometimes deliver cocaine.
 
 
 25
 On these facts, we conclude that the district court did not clearly err when it found by a preponderance of the evidence that Runyan played a managerial role in the crime. A two-level enhancement under U.S.S.G. § 3B1.1(c) was therefore proper.
 
 2. Runyan and Obstruction of Justice
 
 26
 U.S.S.G. § 3C1.1 provides for a two-level enhancement for obstructing or impeding the administration of justice during the prosecution of an offense. If the defendant takes the stand and commits perjury with respect to a material fact, a two-level enhancement for obstruction of justice is mandatory. U.S.S.G. § 3C1.1 commentary at nn. 1 & 3(b); United States v. Dunnigan, 507 U.S. 87, 98 (1993); Spears, 49 F.3d at 1143; United States v. Medina, 992 F.2d 573, 591 (6th Cir.1993). When imposing an obstruction-of-justice enhancement, the district court must identify for the record specific instances of conflicting testimony and indicate which portions of defendant's testimony that it finds materially perjurious. Spears, 49 F.3d at 1143; Medina, 992 F.2d at 591. When this determination is appealed, we review the trial court's factual findings under the clearly erroneous standard. United States v. Zajac, 62 F.3d 145, 148 (6th Cir.), cert. denied, 116 S.Ct. 681 (1995).
 
 
 27
 In the present case, Runyan testified that the money sent to Simon in Florida represented payment, not for cocaine, but instead for Simon's interest in a hot tub business. The district court, after considering the trial record, Runyan's demeanor, and the testimony of Simon, found that Runyan "willfully testified falsely as to a material fact ... because the defendant testified that the money that he sent to Mr. Simon was not for the purchase of cocaine in order to avoid conviction." J.A. at 185. Accordingly, the court imposed a two-level enhancement under § 3C.1.
 
 
 28
 Runyan argues that the court improperly based its findings on the jury's verdict and, in addition, improperly assessed the credibility of Runyan's testimony. Although Runyan correctly states that a sentencing court may not defer to the jury's fact-finding role when evaluating a defendant's testimony under oath, United States v. Mathews, 11 F.3d 583, 587 (6th Cir.1993) (quoting Medina, 992 F.2d at 579), the record does not support Runyan's contention that the court based its decision on the jury's verdict. To the contrary, the sentencing court, which has the unique opportunity to judge the credibility of witnesses, specifically found that Runyan lied when he testified as to the legitimacy of the money that he sent to Simon.
 
 
 29
 According to Runyan, however, the district court failed to evaluate the allegedly false statement in a light most favorable to him. Although Runyan is entitled to have his own ambiguous statements resolved in his favor, the sentencing judge need not disregard all evidence against him. See United States v. Crousore, 1 F.3d 382, 385 n. 3 (6th Cir.1993); Spears, 49 F.3d at 1143. When a defendant's testimony is at odds with other witnesses, as here, the sentencing court resolves the conflict in credibility. Spears, 49 F.3d at 1143. The court found Runyan's account to be less credible than Simon's, and we will not lightly disturb such a determination as credibility assessments are within the province of the trial court. Zajac, 62 F.3d at 148; United States v. Brown, 946 F.2d 1191 (6th Cir.1991). Nothing in the record convinces us that the court clearly erred when it concluded, based in part on Simon's testimony, that Runyan lied with respect to the legitimacy of the money sent to Simon in order to avoid a conviction. Accordingly, we affirm the two-level enhancement for obstruction of justice.
 
 3. Acceptance of Responsibility
 
 30
 Under U.S.S.G. § 3E1.1, "if the defendant clearly demonstrates acceptance of responsibility for his offense, the offense level is decreased by two levels." The burden is on the defendant to "demonstrate" acceptance of responsibility. U.S.S.G. § 3E1.1(a). We review the district court's decision to deny such a reduction for clear error, and "[b]ecause the trial court's assessment of a defendant's contrition will depend heavily on credibility assessments, the 'clearly erroneous' standard will nearly always sustain the judgment of the district court in this area." United States v. Christoph, 904 F.2d 1036, 1041 (6th Cir.1990) (citations omitted).
 
 
 31
 Appellants argue that they demonstrated the requisite contrition to qualify for the two-point reduction. Three months prior to sentencing, the defendants made themselves available to the government and engaged in two or three debriefing sessions in an effort to cooperate. In addition, at the sentencing hearing, all three acknowledged that their conduct was criminal and expressed regret with respect to the decisions that ultimately landed them before the court. However, after considering their statements, the district court denied the adjustment, noting that the defendants accepted responsibility for their actions and began cooperating with the government only after being tried and convicted.
 
 
 32
 According to the sentencing guidelines, the acceptance of responsibility adjustment "is not intended to apply to a defendant who puts the government to its burden of proof at trial by denying the essential factual elements of guilt, is convicted, and only then admits guilt and expresses remorse." U.S.S.G. § 3E.1.1 commentary at n. 2. However, "[i]n rare situations a defendant may clearly demonstrate an acceptance of responsibility for his criminal conduct even though he exercises his constitutional right to trial." Id. For example, the adjustment is appropriate "when a defendant goes to trial to assert and preserve issues not related to factual guilt (e.g., to make a constitutional challenge to a statute or a challenge to the applicability of a statute to his conduct)." Id. Even in these rare instances, the "determination that a defendant has accepted responsibility will be based primarily upon pre-trial statements and conduct." Id.
 
 
 33
 Clearly, this case does not involve the type of rare situation contemplated by the sentencing guidelines. All three appellants put the government to its burden of proof, contesting factual guilt, and their pre-trial conduct does not indicate that they accepted responsibility for their actions. Consequently, we find that the district court did not clearly err in finding that the appellants' conduct did not warrant an acceptance of responsibility adjustment under § 3E1.1.
 
 III.
 
 34
 Having found no error in the proceedings below, we Affirm.