NOT RECOMMENDED FOR PUBLICATION
File Name: 24a0009n.06

Case No. 23-3248

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
Jan 08, 2024
KELLY L. STEPHENS, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff - Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO |
| | ) | |
| A. EDDY ZAI, | ) | |
| Defendant - Appellant. | ) | OPINION |
| | ) | |

Before: COLE, GIBBONS, and BUSH, Circuit Judges.

JULIA SMITH GIBBONS, Circuit Judge. A. Eddy Zai moved for early termination of the supervised release term imposed in connection to his bribery and fraud convictions. Zai alternatively requested modification of supervised release to remove current travel restrictions. The district court denied both requests. The sole issue in this case is whether the district court's decision to do so was an abuse of discretion, made based on a clearly erroneous view of the facts. Because we find no abuse of discretion, we affirm.

I.

A. Eddy Zai pled guilty to nine federal offenses arising out of his payment of bribes to an officer of the St. Paul Federal Croatian Credit Union ("St. Paul") and obtainment of millions of dollars in fraudulent loans to Zai's companies. The scheme began in 2003, when Zai conspired with St. Paul's Chief Operating Officer, Anthony Raguz, to defraud St. Paul. Zai submitted loan applications containing false information, and Raguz approved these applications and then issued fraudulent loan checks for Zai to redirect to various business entities. One of the entities fueled

by loan proceeds was The Cleveland Group, Ltd. ("TCG"). TCG was the sole owner of another of Zai's entities, the Cleveland International Fund ("CIF"). From 2003 to 2007, Zai and his business entities obtained roughly $3 million in fraudulent loans. Zai and his business entities stopped making loan repayments to St. Paul in 2007. But from 2007 to 2010, Zai and his various entities continued to obtain approximately $13.7 million in fraudulent loans.

Relevant to this appeal is Zai's effort to avoid bankruptcy for some of these entities in 2008. Around this time, Zai traveled to China seeking foreign investors for TCG. Zai sought to use the U.S. Citizenship and Immigration Services EB-5 program, a program that provides immigration incentives for foreign investors in United States businesses, to garner interest. CIF was organized in 2009 and enjoyed investment from Chinese investors pursuant to the EB-5 program. This funding enabled CIF to pursue multiple projects in Ohio and ultimately contribute to repaying St. Paul.

In 2012, Zai pled guilty to federal offenses related to his fraudulent conduct. The district court sentenced him to a total of 87 months' incarceration and five years' supervised release with standard conditions. The court also mandated Zai's repayment of $23,623,294.91 in restitution. After completing his custodial sentence, Zai began supervised release in 2019. His supervised release term extends until July 18, 2024. By all accounts, Zai has demonstrated exemplary behavior both in custody and on supervised release.

Zai has previously appeared before this panel in connection with his sentence. In 2021, Zai moved pro se for early termination of supervised release, citing his impressive rehabilitative efforts since sentencing. Although the government did not oppose Zai's request, the probation office initially recommended denying termination based on Zai's outstanding restitution obligations. The district court later denied Zai's motion without explanation. Zai then urged the

district court to modify his terms of supervision to remove the requirement of permission before traveling outside of the district. The district court again denied his motion without explanation.

Zai appealed these denials, and we vacated the district court's judgment—requiring it on remand to consider the relevant 18 U.S.C. § 3553(a) factors and provide an "adequate explanation" for its ruling. *United States v. Zai*, 2022 WL 17832201, at *1 (6th Cir. Dec. 21, 2022). Zai subsequently renewed his motions, emphasizing his need to travel for work and highlighting that neither the government nor probation office opposed his request to terminate supervision.

In ruling on the renewed motion, the district court discussed its reasons for denying Zai's renewed requests. The district court highlighted its belief that Zai's international travel played a key role in Zai's criminal conduct, as he used fraudulent funds to travel and obtain foreign investment to keep his businesses afloat. The continuation of these businesses, the court reasoned, allowed Zai to continue to pay himself a salary, thus benefitting from that fraud. The court also noted that Zai's fraudulent activities put these un-knowing investors at significant risk of harsh immigration consequences and the potential forfeiture of the business. While recognizing Zai's compliance with his supervised release terms, the court ultimately determined that the duration and extent of Zai's criminal activity, the role that international travel played in furthering that activity, and the lack of a viable mechanism to supervise Zai abroad counseled against modifying or terminating Zai's supervised release, especially in light of what it perceived as a lack of detail surrounding Zai's new employment position and his need to travel for work. The court concluded that protection of the public would be best served by continued supervision. Zai appeals this denial, arguing solely that the district court abused its discretion in denying Zai's request for termination or modification by relying on an erroneous determination that international travel played a role in Zai's criminal activity.

II.

Zai initially moved for termination of supervised release pursuant to 18 U.S.C. § 3583(e)(1). This provision first requires that the movant surpass one year on supervised release. *Id.* If this threshold is met, the district court "may"—after considering the factors set forth in 18 U.S.C. § 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7)—terminate the movant's supervised release if "warranted by the conduct of the [movant] released and the interest of justice." *Id.*; *United States v. Suber*, 75 F. App'x 442, 443–44 (6th Cir. 2003). The court may alternatively modify the movant's term of supervised release based on the same § 3553(a) factors. *See* 18 U.S.C. § 3583(e)(2). At bottom, modification or early termination of supervised release is a "discretionary decision" warranted only where the movant "shows changed circumstances - such as exceptionally good behavior." *United States v. Atkin*, 38 F. App'x 196, 198 (6th Cir. 2002) (citing *United States v. Lussier*, 104 F.3d 32, 36 (2d Cir. 1997)).

We review orders denying motions to terminate or modify supervised release for abuse of discretion. *United States v. Butler*, 2023 WL 6552878, at *2 (6th Cir. June 14, 2023); *Suber*, 75 F. App'x at 443 (citing *United States v. Lowenstein*, 108 F.3d 80, 85–86 (6th Cir. 1997) (reviewing revocation of supervised release determination for abuse of discretion)). Abuse of discretion occurs when a district court "relies on clearly erroneous findings of fact," improperly applies the law, or uses an erroneous legal standard. *Romstadt v. Allstate Ins. Co.*, 59 F.3d 608, 615 (6th Cir. 1995) (quoting *Southward v. S. Central Ready Mix Supply Corp.*, 7 F.3d 487, 492 (6th Cir. 1993)). This standard requires that the reviewing court be "firmly convinced that a mistake has been made." *Id.* Where the evidence gives rise to "two permissible views," "the factfinder's choice between them cannot be clearly erroneous." *Anderson v. City of Bessemer City*, 470 U.S. 564, 574

(1985)); *United States v. Blakely*, 708 F. App'x 265, 268 (6th Cir. 2017); *United States v. Hughes*, 604 F. App'x 448, 452 (6th Cir. 2015).

III.

Zai has served more than one year of his supervised release term, making him statutorily eligible for early termination. *See Zai*, 2022 WL 17832201, at *6. The district court denied Zai's renewed request for numerous reasons. Zai deems this denial an error, but—puzzlingly—only challenges one of the district court's grounds for denial. Specifically, Zai bases this appeal on the argument that the district court's factual determination that Zai's international travel fueled further fraudulent activity was clearly erroneous. Zai contends that his criminal offenses were wholly domestic, as he defrauded an Ohio bank and, in relevant part, funneled those funds through TCG to build up CIF—both domestic entities. Although Zai traveled internationally to obtain further funding for his businesses, he characterizes that conduct as "untethered" from his criminal fraud. CA6 R. 8, Appellant Br., at 12. Zai cites declarations and affidavits demonstrating the substantial outside funding CIF ultimately obtained to sustain real estate projects in Ohio. Accordingly, rather than traveling to obtain foreign investments to further perpetuate his fraud on St. Paul, Zai argues that such travel enabled him to "raise legitimate money to pay back the fraudulent loans he obtained from St. Paul." *Id.* at 13.

The district court viewed Zai's travel efforts differently. Specifically, the district court determined that "Zai's international activities *fueled* additional fraudulent activity." DE 280, Order, Page ID 4208 (emphasis in original). The record demonstrates that Zai's entities stopped making loan repayments to St. Paul in 2007. In 2008, Zai found his major businesses on the brink of bankruptcy. To avoid dissolution, Zai traveled to China to obtain investors for TCG through the EB-5 program. Zai's counsel acknowledged that initiating bankruptcy proceedings would have

exposed Zai and Raguz's ongoing crimes. Zai's counsel also admitted that the fraudulent loan proceeds funded both Zai's travel to China and his subsequent attorney fees associated with setting up the EB-5 program to enable foreign investment in his business entities. It is further undisputed that from 2007 until 2010, Zai and Raguz continued to perpetuate the scheme to defraud St. Paul, with Zai's entities obtaining additional loans of approximately $13.7 million from St. Paul in those years alone. The district court could thus reasonably determine that Zai's international travel and obtaining foreign investors helped Zai to avoid bankruptcy and to continue his fraudulent activities with respect to St. Paul, even if this conduct also enabled Zai to pay back some of the outstanding loans.

While the record supports Zai's contention that the travel and foreign investments served to legitimize his entities and to pay restitution to St. Paul, the record also supports a finding that this conduct enabled Zai's entities to avoid bankruptcy and thus continue his fraudulent activities. Because two permissible interpretations of Zai's travel exist, the district court's adoption of the latter was not clearly erroneous. *See Anderson*, 470 U.S. at 573 (The abuse of discretion standard "plainly does not entitle a reviewing court to reverse the finding of the trier of fact simply because it is convinced that it would have decided the case differently.").

Even if Zai were correct that the district court lacked a factual basis for concluding that his international travel fueled his fraudulent activities, the district court did not abuse its discretion in denying his request, because the other bases for its decision were sufficient. For example, although Zai provided a letter in support of his need to travel abroad for work, the district court had reason to be wary of the lack of detail surrounding Zai's position in light of his previous use of business entities to perpetuate a longstanding scheme of fraud. Similarly, the district court emphasized the extent of damage wrought by Zai's crimes and highlighted that it lacked a mechanism to monitor

Zai's behavior abroad. In doing so, the district court referenced the applicable § 3553(a) factor of fashioning a sentence that facilitates protection of the public from the defendant's further crimes. *See* 18 U.S.C. § 3553(a)(2)(C). Zai has not shown that these findings were in error.

In sum, the district court considered the role Zai's travel played in perpetuating his longstanding fraud against St. Paul, "the gravity of [Zai's] underlying offenses," the inability to monitor Zai internationally, and the lack of details about the circumstances of Zai's employment activities overseas.[1] *Suber*, 75 F. App'x at 444; DE 280, Order, Page ID 4208. The court recognized Zai's good conduct on supervised release, but determined that the aforementioned circumstances demonstrated that continuing supervision remained necessary to "protect[] the public" from further "fraudulent activities." DE 280, Order, Page ID 4209. The court did not abuse its discretion in coming to this conclusion.

IV.

Zai raised a "substantial argument" that his commendable conduct in custody and on supervised release warranted early termination. CA6 R. 18, Appellant Reply Br., at 4 (quoting *Zai*, 2022 WL 17832201, at *7 n.5). As this panel previously noted, such argument called for articulation of the district court's rationale for denying Zai's motions. *See Zai*, 2022 WL 17832201, at *7 n.5. Here, the district court provided such rationale. In doing so, the district court

---

[1] Although not articulated as a separate argument, Zai also contends that the district court's conclusion that he did not provide sufficient details surrounding his employment and need for international travel effectively held Zai to a heightened burden. But § 3583(e)(1) allows courts to look beyond the § 3553(a) factors to terminate supervised release if warranted by "the interest of justice." 18 U.S.C. § 3583(e)(1); *Suber*, 75 F. App'x at 444 ("The phrase 'the interest of justice' gives the district court latitude to consider a broad range of factors in addition to an individual's behavior in considering whether to terminate the supervised release period." (citing *United States v. Pregent*, 190 F.3d 279, 282 (4th Cir. 1999))). The district court did not hold Zai to a heightened burden in concluding that the level of detail surrounding Zai's job and the extent of his need to travel internationally did not warrant termination in the interest of justice.

did not abuse its discretion, and its assessment of the role international travel played in perpetuating Zai's crimes was not clearly erroneous. We therefore affirm the district court's order denying Zai's motions to terminate or modify his supervised release.